### In re STEIN & DAY, INCORPORATED, Debtor.

Bankruptcy No. 87 B 20300.

United States Bankruptcy Court, S.D. New York.

April 18, 1990.
As Amended May 10, 1990.

See also, Bkrtcy., 87 B.R. 290.

A. Scott Mandelup, Pryor & Mandelup, Mineola, N.Y., for Barrister Partnerships.

Deryck A. Palmer, Weil, Gotshal & Manges, New York City, for BookCrafters U.S.A., Inc.

## DECISION ON MOTION FOR APPROVAL OF STIPULATION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The movants, Barrister Partnerships ("Barrister"), by Notice of Motion dated May 15, 1989, are seeking approval of a Stipulation ("the Barrister Stipulation") which purports to resolve a motion previously filed by Barrister which sought omnibus relief determining that certain contracts between Barrister and the Kingston Corporation ("Kingston"), a wholly-owned subsidiary of the debtor, were not property of the estate. The Notice of Motion also sought, pursuant to 28 U.S.C. § 1927, costs, expenses and attorney's fees incurred by the movants as a result of the conduct of the debtor's counsel in connection with the Barrister Stipulation. A hearing was held by this court on February 15, 1990 in which evidence was received in connection with that portion of the Notice of Motion which sought relief under 28 U.S.C. § 1927. This court, in a ruling from the bench, denied the motion for sanctions.[1] At the suggestion of counsel for the movant, the hearing was continued until April 11, 1990 and further evidence was received on that date concerning that portion of the Notice of Motion which seeks approval of the Barrister Stipulation.

## FINDINGS OF FACT

1. The debtor commenced this case on June 25, 1987 by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code and thereafter contin-

---

**1.** This court, in denying sanctions, stated the following:

I see no sanctions appropriate in view of the fact that Mr. Barr was relieved as attorney and his authority was limited and could not commit Stein & Day without the approval of Mr. Stein and that was one of the reasons why he was relieved in this case because the cooperation was not there and the confidence was not there and Mr. Stein did not want him to represent him.

ued in operation of its business as a debtor in possession pursuant to the terms and provisions contained in 11 U.S.C. §§ 1107 and 1108 until October 27, 1989, when the case was converted to a case under chapter 7 of title 11 of the United States Code.

2. On or about November 2, 1988, a Notice of Motion was filed by Barrister Associates and Barrister Partnerships which sought the following alternative relief:

(a) A determination that the automatic stay imposed pursuant to 11 U.S.C. § 362(a) would not prevent the Barrister Partnerships from terminating certain Services Agreements ("Services Agreements") between themselves and Kingston, a wholly-owned subsidiary of the debtor; or

(b) In the event it was decided that the automatic stay was in effect, a determination that certain non-monetary breaches by Kingston were not susceptible to cure, and thus, the Services Agreements were terminated; or

(c) An order of this court directing the debtor to assume, pursuant to 11 U.S.C. § 365(d)(2), the Services Agreement and upon the debtor's failure to do so, to deem the Services Agreements rejected.

3. The Services Agreements referenced in the Notice of Motion dated November 2, 1988 were part of a series of transactions between the debtor, Universal Publishing Resources, Ltd. ("Universal"), The Madison Library, Inc. ("Madison Library"), Geoffrey Townsend, Ltd. ("Geoffrey Townsend"), a series of Limited Partnerships referred to as the Barrister Partnerships [2] and Kingston.

4. These transactions began with the debtor entering into Acquisition Agreements ("Acquisition Agreements") with Universal, Madison Library and Geoffrey Townsend (collectively referred to as the "Purchasers"). The first Acquisition Agreement was entered into between the debtor and Madison Library on July 23,

1981, followed by an Acquisition Agreement between the debtor and Geoffrey Townsend on December 17, 1982, an Acquisition Agreement between the debtor and Universal on October 3, 1983 and finally, another Acquisition Agreement between the debtor and Madison Library on December 5, 1985.

5. The relevant terms of these Acquisition Agreements were virtually identical and provided, *inter alia*, that the debtor would sell, transfer and assign certain Book Properties ("Book Properties") to the Purchasers. The Book Properties are described in Exhibit A of the Acquisition Agreements as

... a number of engraved plates and/or lithographic films each embodying forms of either 32 or 16 pages of the text of the Literary Work and other pages to be included in the printed book; four color processed engraved lithographic films embodying the front cover art work for the printed book; and four color processed engraved lithographic films embodying the spine and back cover art work for the printed book, it being understood and agreed that no original artist's rendition is included in the above.

The Literary Works ("Literary Works") covered by the various Acquisition Agreements were set forth on Exhibit A of the respective Acquisitions Agreements by the book titles and authors' names. The Acquisition Agreements further provided that as long as the Purchasers were not in default under the agreement, then the debtor would "refrain absolutely from printing, publishing, distributing and selling Books in the English language embodying the Literary Works and will not exploit or authorize any third party to exploit the Literary Works in the English language." However, the Acquisition Agreements clearly indicated that "no proprietary interest with respect to any copyright in any of the Literary Works was being conveyed to the Purchasers by the debtor." [3]

---

2. Barrister Partnerships consists of a group of approximately 125 Limited Partnerships of which Barrister Associates is the General Partner.

3. Irving Cohen, past president of the Purchasers and the party who signed the Acquisition Agreements on behalf of the Purchasers, testified at the April 11, 1990 hearing that if new book

6. The three purchasing entities, Madison Library, Geoffrey Townsend and Universal then entered into Lease Agreements ("Lease Agreements") with the Barrister Partnerships in 1981, 1982 and 1983, respectively. These Lease Agreements were for eight year periods [4] and encompass the same book titles and authors covered by the Acquisition Agreements. In essence, the Lease Agreements purport to lease to the Barrister Partnerships the Book Properties which were purchased by Madison Library, Geoffrey Townsend and Universal pursuant to the Acquisition Agreements.

7. Finally, the Barrister Partnerships entered into a series of Services Agreements ("Services Agreements") with Kingston in 1981, 1982 and 1983, whereby the Barrister Partnerships agreed to deliver the Book Properties to Kingston with Kingston being granted the exclusive right to "produce, print, bind, distribute, sell and promote the Books ..." Kingston agreed to "produce, print, bind, distribute, sell and promote the Books ("Services") on behalf of the Partnership throughout the territory designated by the Partnership, for a period of nine (9) years from the date hereof." The Services Agreements entered into in 1981 provide that "[a]nything contained herein to the contrary notwithstanding, no Books will be printed pursuant to this Agreement after March 15, 1989." Similarly, the Services Agreements entered into in 1982 provide that "[a]nything contained herein to the contrary notwithstanding, no Books will be printed pursuant to this Agreement after March 15, 1990." As a result, the Services Agreements entered into in 1981 and 1982 have expired by their own terms.

8. Subsequent to the November 2, 1988 Notice of Motion, the attorneys for the movant and attorneys for the debtor entered into a series of negotiations in an attempt to resolve the matters raised by the November 2, 1988 Notice of Motion.

These negotiations resulted in the drafting of the Barrister Stipulation between the debtor and the Barrister Partnerships which provided, *inter alia,* for the rejection, by the debtor of all contracts with the Barrister Partnerships to be followed by a turnover to the Barrister Partnerships of all Book Properties within the debtor's control, an acknowledgement that Kingston was not protected by the automatic stay and an assertion that the Barrister Partnerships intend to file a proof of claim for an unliquidated amount for monies due and owing under the Services Agreements.

9. Testimony was received from Robert Pryor, counsel for Barrister Partnerships, which outlined a series of telephone conversations and facsimile transmissions between Mr. Pryor and Joe Haspel, an associate of the law firm which previously represented the debtor during this time period. Mr. Pryor testified that it was his understanding that the stipulation had been approved by Mr. Stein and would be filed by Mr. Haspel with the clerk of this court in resolution of the November 2, 1988, Notice of Motion.

10. Mr. Barr, the lead attorney representing the debtor during this time period, testified to the tumultuous nature of the case at the time due to the fact that his law firm had sought to be relieved as counsel for the debtor in December of 1988 with an order being entered by this court requiring the firm to stay in the case until January 29, 1989. As a result of these factors, Mr. Barr explained that his law firm insisted that Mr. Stein, as a principal of the debtor, give specific instructions on any matters concerning the debtor.

11. A fully executed copy of the stipulation agreement was never introduced into evidence and there was no testimony to the effect that the stipulation was ever signed. The only copy of the stipulation which was introduced into evidence was unsigned, con-

---

properties to a title were created, the Purchasers would not have an interest. Mr. Cohen explained that the Purchasers only have an interest in the Book Properties as set forth in the exhibits to the Acquisition Agreements.

4. The Lease Agreements entered into between the Barrister Partnerships and Madison in 1981 and the Barrister Partnerships and Geoffrey Townsend in 1982 appear to have expired, by their own terms, on March 15, 1989 and March 15, 1990, respectively.

tained corrections of typographical errors and was accompanied by a facsimile cover sheet from Mr. Haspel to Mr. Pryor which stated, in the special instructions portion, "subject to review by the powers that be". Furthermore, Mr. Barr testified that Mr. Stein continually changed his mind regarding specific details contained within the stipulation and that Mr. Barr never got an answer from Mr. Stein as to the final stipulation.

12. During this same time period, BookCrafters U.S.A., Inc. ("BookCrafters"), a secured claimholder of Stein & Day, also began negotiations with the debtor. These negotiations arose from a proceeding filed by BookCrafters, on December 21, 1988, requesting relief from the automatic stay to foreclose on its security interest and liens.

13. The ensuing negotiations resulted in a stipulation ("the BookCrafters Stipulation") which provided that BookCrafters would acquire all of the assets of Stein & Day, free and clear of all liens, claims and encumbrances in exchange for the sum of $500,000.00.

14. By Notice of Hearing dated January 27, 1989, all known creditors were given notice of the hearing to approve the Book-Crafters Stipulation. A review of the Affidavit of Service filed with this court on January 31, 1989 reveals that notice was sent to the offices of Prior (sic) & Mandelup, attorneys for the Barrister Partnerships.[5] The notice provided that the debtor would seek approval of this court, on February 21, 1989, at 10:00 A.M., of a Stipulation of Settlement "which, in effect, would convey the assets of Stein and Day Incorporated to BookCrafters U.S.A., Inc." The notice further stated that "[o]pposition to the aforesaid application must be received no later than 5:00 P.M. on February 16, 1989". Although objections were filed by other parties, no objection to the sale was

received by this court from Barrister Partnerships.

15. A hearing was held on February 21, 1989 and approval for the sale was given by this court.

16. The Barrister Partnerships now seek approval of the Barrister Stipulation. BookCrafters alleges that the subject matter of the Barrister Stipulation partially encompasses the assets of the debtor which were sold to them in connection with the BookCrafters stipulation.

## DISCUSSION

■ The first issue which must be addressed by this court concerns whether or not subject matter jurisdiction exists to adjudicate the claim of the movant. A bankruptcy court's subject matter jurisdiction is limited by 28 U.S.C. § 157(a) and § 1334(b) to those issues which "arise under", "arise in" or are "related to" a bankruptcy. Generally, bankruptcy courts lack jurisdiction to adjudicate controversies between third parties which do not involve the debtor or property of the debtor, unless the court cannot perform its administrative duties without resolving the controversy. *In re Shirley Duke Assoc.*, 611 F.2d 15, 18 (2d Cir.1979); *In re Stanndco Developers, Inc.*, 534 F.2d 1050, 1052–53 (2d Cir.1976); *First State Bank and Trust Co. v. Sand Springs State Bank*, 528 F.2d 350, 353–54 (10th Cir.1976); *Evarts v. Eloy Gin Corp.*, 204 F.2d 712, 717 (9th Cir.1953), *cert. denied*, 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384 (1953); *In re Hotel Martin Co.*, 94 F.2d 643 (2d Cir.1938).

In determining whether approval of the Barrister Stipulation would affect property of the debtor's estate, this court must look to the impact of the prior approval, by this court, of the BookCrafters Stipulation which entailed the sale of assets of the debtor to BookCrafters. As provided in 11 U.S.C. § 363(b)(1), "[t]he trustee, after notice and a hearing, may use, sell, or lease,

---

5. Service was made upon approximately 2,600 people consisting of all of the authors and creditors in this case. See Transcript of Adjourned Hearing on Motion for Relief From Automatic Stay; Adjourned Hearing on Application to Approve Sale of Copyrights; Adjourned Hearing on Motion to Approve Release of Rights; Adjourned Hearing Re: Royalty Capitol Claims; Adjourned Hearing on Motion to Abandon Editorial and Publicity Archives to Columbia University; Hearing on Motion to Convert or Dismiss Chapter 11 Petition, pg. 4, lines 12–15.

other than in the ordinary course of business, *property of the estate.*" Therefore, in order for assets to come within the auspices of § 363 they must be property of the estate. As provided by 11 U.S.C. § 541(a)(1), the estate created by the filing of a bankruptcy petition consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." The scope of § 541(a)(1) is broad and includes tangible or intangible property, as well as, causes of action. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 (1983) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5868).

In this instance, any of the Book Properties which were the subject of the Acquisition Agreements entered into between the debtor and Madison Library, Geoffrey Townsend and Universal in 1981, 1982, 1983 and 1985 were not property of the estate and could not have been transferred to BookCrafters as part of the sale of assets. No evidence was introduced which demonstrated that there was any default by the three Purchasers in connection with any of the Acquisition Agreements. Accordingly, title to the Book Properties passed to Madison Library, Geoffrey Townsend and Universal prior to the filing of the chapter 11 petition and such Book Properties are not property of the estate.

■ However, pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal. *In re Stadium Management Corp.*, 895 F.2d 845, 847 (1st Cir.1990). Furthermore, "when an order confirming a sale to a good faith purchaser is entered and a stay of that sale is not obtained, the sale becomes final and cannot be reversed on appeal." *Id.*, (quoting, *Creditors Committee v. Armstrong Business Credit Corp. (In re Saco Local Dev. Corp.)*, 19 B.R. 119, 121 (Bankr. 1st Cir.1982)). By protecting sales approved pursuant to 11 U.S.C. § 363, two policies are advanced. First, the finality of bankruptcy sales encouraged by protecting

a good faith purchaser increases the value of the assets that are for sale. *In re Stadium Management Corp.*, 895 F.2d at 847. (citations omitted) Secondly, a court's general jurisdictional bar from deciding cases in which they cannot provide a remedy are advanced by the finality afforded a § 363 sale. *Id.* at 848. (citations omitted)

Therefore, BookCrafters is protected as a good faith purchaser as to all *property of the estate* which was transferred pursuant to the BookCrafters Stipulation and approved by this court. There may be a question as to whether certain new book properties were created by the debtor and sold to BookCrafters. There may also be an issue as to whether certain parts of the Acquisition Agreements have been violated by the debtor; in particular, that portion of the Acquisition Agreements which concerns exploitation of the Literary Works. However, these issues are not before this court.

■ One portion of the Barrister Stipulation purports to bind Kingston, a wholly-owned subsidiary of the debtor. Although, Mr. Barr, then counsel for the debtor, represented to Mr. Pryor in a letter dated April 1, 1988 that Kingston falls within the purview of the bankruptcy proceeding, this is not true. (*See* Exhibit 1) A bankruptcy court's jurisdiction does not extend to a wholly-owned subsidiary of the debtor, unless the subsidiary is "a mere sham or conduit rather than a viable entity." *In re Beck Industries*, 479 F.2d 410, 416 (2d Cir. 1973), *cert. denied*, 414 U.S. 858, 94 S.Ct. 163, 38 L.Ed.2d 108 (1973). See *In re Clifford Resources, Inc.*, 24 B.R. 778, 780 (Bankr.S.D.N.Y.1982) (*Beck* is still good law even though decided under the old Bankruptcy Act).

■ No testimony was elicited which demonstrated that Kingston was a sham of the debtor and absent such a showing, this court cannot exercise jurisdiction over Kingston. Therefore, this court lacks jurisdiction to approve that portion of the Barrister Stipulation which concerns Kingston and Barrister, because it is between third

parties and does not pertain to the debtor and does not affect property of the estate.

To the extent that the movants are attempting, through the language of the stipulation, to pierce the corporate veil of the debtor to collect monies from the debtor which are due and owing by Kingston pursuant to the Services Agreements, this proceeding is similar to *Murdock v. Allina (In re Curtina International, Inc.)*, 15 B.R. 993 (Bankr.S.D.N.Y.1981) and *Goldman v. Haverstraw Associates (In re R.H.N. Realty Corp.)*, 84 B.R. 356 (Bankr.S.D.N.Y. 1988), two cases previously before this court. In both of those cases, the plaintiffs in the adversary proceedings sought to pierce the corporate veil of the debtor. In *Curtina*, the plaintiff sought to collect monies owed it by the nondebtor defendants as the alter egos of the debtor. *Murdock v. Allina (In re Curtina International, Inc.)*, 15 B.R. at 995. Likewise, in *R.H.N. Realty*, the plaintiff sought to recover from nondebtor defendants monies owed under a deficiency judgment against the debtor using a theory that the defendants were alter egos of the debtor. *Goldman v. Haverstraw Associates (In re R.H.N. Realty Corp.)*, 84 B.R. at 359. In both cases the court determined that it lacked jurisdiction because the claims did not arise under or in a case under title 11 nor were they related to a case under title 11. *Murdock v. Allina (In re Curtina International, Inc.)*, 15 B.R. at 996; *Goldman v. Haverstraw Associates (In re R.H.N. Realty Corp.)*, 84 B.R. at 359. In particular, this court, in *Curtina*, observed that although the plaintiff "bottoms its claim against the nondebtor defendants on the theory of piercing the debtor's corporate veil, it inflicts no wound upon the debtor nor will it draw any blood from this stone." *Murdock v. Allina (In re Curtina International, Inc.)*, 15 B.R. at 995.

However, unlike the *Curtina* and *R.H.N. Realty* cases, piercing the debtor's corporate veil, in this instance, to allow the filing of a proof of claim by Barrister Partnerships for a claim arising from a contract between it and Kingston would not only wound the debtor, but could pierce the debtor's jugular vein. The Services Agreement is a contract between third parties of which this court has no jurisdiction. Furthermore, any claim arising from this contract is between Barrister Partnerships and Kingston and cannot be satisfied from property of the debtor's estate absent a showing by Barrister Partnerships that Kingston is a mere sham rather than a viable entity. *See In re Beck Industries*, 479 F.2d at 416. Barrister Partnership has failed to make such a showing. Therefore, this court lacks jurisdiction because the claim arises from a controversy between third parties which does not involve the debtor or property of the debtor.

■ Finally, even if this court had jurisdiction in this proceeding, the Barrister Stipulation would not be binding upon the debtor. An analysis of this conclusion begins with the proposition that state law must be applied to determine the validity of a bankruptcy settlement. *See Royal Bank and Trust Company v. Pereira (In re Lady Madonna Industries, Inc.)*, 76 B.R. 281, 290 (S.D.N.Y.1987). The relevant New York law applicable to settlement agreements is found in C.P.L.R. § 2104 which provides as follows:

> An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is *not binding upon a party unless it is in writing subscribed by him or his attorney* or reduced to the form of an order and entered. (emphasis added)

*In re Dolgin Eldert Corp.*, 31 N.Y.2d 1, 334 N.Y.S.2d 833, 286 N.E.2d 228 (1972).

In this instance, documentary evidence reveals that no final memorialization of the proposed stipulation was attained by the movants. In fact, a copy of the stipulation, along with the facsimile cover sheet, which were entered into evidence at the hearing of this proceeding reveal that the terms of the agreement were not final, but were subject to the approval of Mr. Stein. Additionally, testimony from Mr. Barr revealed that due to the tenuous nature of the attorney-client relationship which existed during this time period, he sought Mr. Stein's ap-

proval on virtually every aspect of the case. Because of this cautious approach exercised by Mr. Barr, anyone from his office would have exceeded his or her authority in executing the stipulation without first consulting with Mr. Stein. Therefore, even if this court had jurisdiction with respect to this matter, the movant's request for approval of the Barrister stipulation would be denied because no signed stipulation exists for this court to approve.

## CONCLUSIONS OF LAW

1. This court lacks jurisdiction under 28 U.S.C. § 1334 to approve the stipulation between the debtor, Stein & Day and the movant, Barrister Partnerships.

2. Even if this court had jurisdiction, the Barrister Stipulation would not be binding because it is not signed by the parties as required by C.P.L.R. § 2104.

SO ORDERED.