**WACHOVIA BANK OF GEORGIA,
N.A., Appellant,**

v.

**APEX TECH OF GEORGIA, INC., Breton International, Inc., John Cann
and Dorothy Cann, Appellees.**

No. 92 Civ. 128 (LJF).

United States District Court,
S.D. New York.

Sept. 9, 1992.

ORDER AND OPINION

FREEH, District Judge.

Wachovia Bank of Georgia (the "Bank") appeals from an Order dated November 27, 1991, of the Bankruptcy Court for the Southern District of New York. Pursuant to the Order, Chief Bankruptcy Judge Lifland approved a Settlement Agreement (the "Agreement") between the Bank, Apex Tech of Georgia, Inc. ("Apex Georgia") and the individual and corporate debtor guarantors of Apex Georgia's obligations to the Bank (collectively, the "Guarantors"). The Agreement required Apex Georgia to surrender a piece of real property consisting of 1.38 acres of land improved with a one story building containing approximately 16,300 square feet, located at 3393 Malone Drive, Chamblee, Georgia, ("the Property") in full and final satisfaction of all claims held by the Bank against Apex Georgia and the Guarantors. For the reasons stated at oral argument and below, the Court finds that the Bankruptcy Court did not abuse its discretion in concluding that the settlement agreement among the Bank, Apex Georgia and the guarantors was binding. Accordingly, the Order is affirmed.

*The Facts*

On June 20, 1989, Apex Georgia borrowed six hundred thousand dollars ($600,-000) from the Bank to purchase the Property. The Bank retained a first priority lien on the Property. As officers and shareholders of Apex Georgia, Dorothy and John Cann in addition to Breton International Inc. ("Breton") served as the guarantors of Apex Georgia's obligations to the Bank.

On November 7, 1990, Breton, Apex Georgia and other affiliated companies filed for reorganization under Chapter 11 of the Bankruptcy Code. On or about November 30, 1990 and for several months thereafter, Marvin H. Zion, Esq. of Zion, Tartleton & Siskin, as counsel for the Bank and Shea & Gold, as former counsel for Breton and Apex Georgia, engaged in several discussions and agreed that Apex Georgia could keep the property for a reasonable period of time and use its best efforts to sell the property and pay the Bank as long as Apex Georgia also continued to pay for the insurance and maintenance expenses of the property.

On June 10, 1991, Jonathan A. Bernstein, Esq. of Dreyer & Traub, as counsel for the individual guarantors, telephoned Zion, and asked whether the Bank would accept the property in full satisfaction of any and all outstanding claims against Apex Georgia and the guarantors. On July 11, 1991, Zion informed Bernstein that the Bank agreed to Bernstein's proposed agreement as a final settlement. In addition, Zion told Bernstein that he himself would communicate the agreement to the new counsel for Apex Georgia and Breton. On July 16, 1991, Zion advised Barry N. Seidel, Esq. of Wilkie Farr & Gallagher, as new counsel for Breton and Apex Georgia, that the Bank had agreed to release all claims against Apex Georgia and the Guarantors in exchange for Apex Georgia's abandonment of the property. During this phone conversation, Seidel voiced his approval of these arrangements as the final settlement. In order to memorialize these discussions, Zion sent Seidel a letter dated July 16, 1991, which states that "You (Apex Georgia) will propose that the bankrupt's real property be abandoned so that the Bank may foreclose. The Bank in return shall release all Guarantors."

During the following weeks, Zion attempted to contact Seidel several times in order to ascertain whether Apex Georgia had filed a motion to abandon property in Bankruptcy Court. On August 23, 1991, Zion spoke with Gary Hirsch, Esq., an associate attorney at Wilkie Farr & Gallagher, who advised Zion that Apex Georgia "fully intended to carry out the agreement with the Bank." In a letter dated August 28, 1991, Zion withdrew the Bank's offer to take title to the property in satisfaction of the Bank's claims against Apex Georgia and the guarantors. In a letter dated September 5, 1991, Seidel indicated that, despite the Bank's attempt to withdraw, Apex Georgia still intended to perform under the provisions of the final settlement.

On September 27, 1991, Apex Georgia served notice upon the Bank of its motion

to seek an order of the Bankruptcy Court authorizing Apex Georgia to abandon the property to the Bank in full and final satisfaction of any and all claims held by the Bank against Apex Georgia and against the guarantors of the loan. The Notice of the Motion set the hearing date for October 28, 1991 and required that any objections to the relief requested in the motion be made in writing, served and filed prior to October 23, 1991. At the request of the Bank, the hearing date was adjourned with the consent of the parties until November 21, 1991.

On November 21, 1991, the Bank, by its New York counsel, Ronald Levy, Esq. of Heiko & Levy, appeared at a hearing to oppose that portion of the motion that sought to enforce the final settlement. After the hearing had commenced, Levy submitted to the Bankruptcy Court the Bank's opposing papers which included a Memorandum in Opposition to the Motion and Zion's Affidavit in Opposition to the Motion.[1] During the hearing, the Court directed that oral testimony be taken in order to ascertain the intentions of Seidel and Zion with regard to the final settlement. However, only Seidel and Hirsch from Wilkie Farr & Gallagher were available on behalf of Apex Georgia for questioning. Levy objected to the Bankruptcy Court's decision to question Seidel and Hirsch in open court without Zion present for questioning as well and requested a continuance from the Bankruptcy Court in order to produce Zion from Georgia, for questioning. The Bankruptcy Court rejected that request and later requests from the Bank for a continuance. The Bankruptcy Court proceeded with the hearing by listening to the testimony of Apex Georgia's witnesses and subsequently granted Apex Georgia's motion from the bench.

DISCUSSION

The Bank appeals the order of the Bankruptcy Court on several separate and independent grounds. On none of these grounds, does the Court find a legitimate basis for setting aside the Bankruptcy Court's Order. Because this Court is functioning as an appellate court the Bankruptcy Court's findings of fact shall not be overturned unless clearly erroneous. Bankruptcy Rule 8013. The legal conclusions of the Bankruptcy Court however, are open to a *de novo* review. With these principles in mind, the Court will consider each of the Appellant's arguments in turn.

*1. Requests for a Continuance*

First, the Bank contends that the Bankruptcy Court abused its discretion by rejecting the Bank's repeated requests for a continuance in order to produce Zion as a live witness. Whether a request for a continuance should be granted is a question within the province of the sound discretion of trial courts, including the Bankruptcy Court. *See Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). Upon review, the decision of a Bankruptcy court to grant or deny a continuance should only be overturned upon a showing of an abuse of discretion which substantially impairs the ability of the appealing party to litigate effectively. *See United States v. King*, 762 F.2d 232, 235 (2d Cir.1985), cert. denied, 475 U.S. 1018, 106 S.Ct. 1203, 89 L.Ed.2d 316 (1986); *United States v. Dennis*, 843 F.2d 652, 653 (2d Cir.1988). Rather than a mechanical test, the determination of whether there has been an abuse of discretion varies with the particular circumstances of each case. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). However, there are some basic considerations in reviewing the denial of a continuance. *See United States v. Haldeman*, 559 F.2d 31, 83 (D.C.Cir.1976).

First, the Court must determine whether the additional evidence would be valuable enough to warrant the delay in the judicial process and the burden on the other parties in the matter. *Powell v. Gardner*, 891 F.2d 1039, 1046 (2d Cir.1989); *see Dow Chemical Pacific Ltd. v. Rascator Maritime, S.A.*, 782 F.2d 329, 342 (2d Cir. 1986). Second, the Court must assess

---

[1]. The Bank's opposing papers had been submitted to Wilkie Farr & Gallagher as counsel for Apex Georgia and Breton one week earlier.

whether the requesting party acted with proper diligence in its efforts to timely present the additional evidence during the proceeding in question. *Haldeman* at 83.

The Bank requested a continuance in order to produce Zion as an additional live witness on the grounds that Zion was a major participant in the disputed communications concerning the final settlement. Although the Court agrees that Zion's version of the facts was crucial to any factual determination of the Bankruptcy Court, the Court also notes that the submitted affidavit of Zion contained an extensive description of Zion's version of the facts. This Court agrees with the Bankruptcy Court that additional oral testimony by Zion would have been repetitious and only duplicated the written statements already contained in Zion's affidavit. *See, e.g. Carrion v. Yeshiva University*, 535 F.2d 722, 730 (2d Cir.1976) (trial court did not abuse discretion in denying an adjournment where witness' prior testimony before an administrative agency was read by the court). Instead of assisting the judicial process, additional testimony by Zion would only have needlessly delayed the hearing.[2] The Bankruptcy Court's denial of a continuance was neither an abuse of discretion nor "a myopic insistence upon expeditiousness." *Ungar* 376 U.S. at 589, 84 S.Ct. at 849.

In addition, counsel for the Bank had ample opportunity to secure the presence of Zion for the Bankruptcy Court hearing but failed to do. The Bank argues that Levy was not guilty of a lack of diligence because he had no reason to expect that the hearing would involve oral testimony and thus, he understandably made no attempts to secure Zion as a live witness. However, there are several reasons which belie the Bank's claim of unfairness.

▉ First, although the Court agrees that the Bankruptcy Court could have proceeded without oral testimony and ruled on the papers alone, this does not mean that the Bankruptcy Court's decision to take oral testimony and deny a continuance was an abuse of discretion. While Bankruptcy Code § 554(b) and Bankruptcy Rule 9014 do require that all interested parties be afforded reasonable notice and a hearing with regard to a motion to abandon property, the Bankruptcy Court possesses considerable discretion in determining the nature of the hearing. The broad definition of "notice and a hearing" in Bankruptcy Code § 102(1) and the applicability of the Federal Rules of Evidence and Rules 43, 44 and 44.1 for the Federal Rules of Civil Procedure pursuant to Bankruptcy Rule 9017, gives a bankruptcy court the discretion to hold an evidentiary hearing with oral testimony on a motion. Secondly, in his Memorandum in Opposition to the Motion, Levy argued that it was improper for Seidel and his firm to continue as advocates for Apex Georgia since Seidel should have expected that he himself would be called as a witness on behalf of Apex Georgia. Clearly this indicates that Levy believed that there was a significant possibility that Seidel would be called as a witness. With a reasonable notice of two months and an expectation that Seidel would be called as a witness, Levy failed to act diligently in making attempts to secure Zion as a witness for the hearing. Because additional testimony by Zion would have been redundant and because counsel for the Bank failed to exercise proper diligence, the Court finds that the Bankruptcy Court did not abuse its discretion in denying the Bank's requests for a continuance.

### 2. Unilateral v. Bilateral Contract

▉ The Bank also appeals on the grounds that the Settlement Agreement is not binding. As stated earlier, upon appeal from a bankruptcy court, a district court analyzes the findings of fact under a clearly erroneous standard and conducts a *de novo* review of the conclusions of law. Fed.R.Civ.P. 52(a); Bankruptcy Rule 8013; *In re Ionosphere Clubs, Inc.*, 922 F.2d 984,

---

2. The notice and hearing contemplated by Bankruptcy Code § 554(b) is one that affords creditors an opportunity to object. *In re Arista Devices Corp.*, 94 B.R. 26 fn. 5 (1988); 4 Collier on Bankruptcy ¶ 554.02 at 554–10 (15th ed. 1988). The hearing, even without the continuance for Mr. Zion's testimony, did afford the Bank such an opportunity.

988 (2d Cir.1990). Under the clearly erroneous standard, findings of fact that are supported by evidence may be reversed only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). If a lower court's findings of fact constitute one of several plausible interpretations, the reviewing court may not reverse merely because it would have adopted an interpretation other than the one adopted by the lower court. A lower court's choice between two permissible views of the facts cannot be held as clearly erroneous. *Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511; *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949).

▮▮▮ The Bank claims that the settlement agreement is not binding because Apex Georgia failed to accept the Bank's offer of a unilateral contract by performing prior to the Bank's alleged withdrawal on August 28, 1991. A unilateral contract is a contract in which the offer invites acceptance not in the form of a promise, but rather, in the form of actual performance. *Ingrassia v. Shell Oil,* 394 F.Supp. 875, 882 (S.D.N.Y.1975). When an offer fails to indicate a specific form of acceptance, acceptance can be manifested in any reasonable manner. Restatement 2d of Contracts § 30(2).

Although the Bank insists that it sought a unilateral contract, Zion never indicated to Seidel on July 16, 1991 during the phone conversation or in the letter that the Bank's offer specifically sought acceptance by the act of moving the Bankruptcy Court to abandon property. In addition, the

Bank's insistence on a unilateral contract is not supported by the surrounding circumstances.[3] Thus, the Court concludes that it was reasonable for Seidel to believe that Apex Georgia had accepted the Bank's offer with its promise and that the final settlement was binding.

*3. Proper Acceptance in a Bilateral Contract*

▮▮▮ The Bank next contends that even if the Bankruptcy Court found the contract to be bilateral, Apex Georgia never properly accepted the Bank's offer. The Bank claims that on July 16, 1991, Seidel did not make a valid promise on behalf of Apex Georgia to accept the Bank's offer because Seidel made his promise conditional upon getting the approval of the individual guarantors. Thereafter, the Bank argues, Seidel never informed Zion that Apex Georgia had received the approval of the individual guarantors and that Apex Georgia had accepted the Bank's offer. Never notified of Apex Georgia's acceptance, the Bank argues that its withdrawal on August 28, 1991 rendered the Settlement Agreement void.

However, the Court finds that the Bankruptcy Court could have adopted a different and equally plausible view of the facts to support its conclusion of a binding settlement agreement.[4] Undisputed by the Bank is the fact that Bernstein, as counsel for the individual guarantors, originally proposed to Zion the same settlement arrangements one month earlier in a telephone conversation on June 10, 1991. On July 11, 1991, Zion indicated to Bernstein that the Bank had agreed to the proposal and that Zion himself would communicate the proposal to counsel for Apex Georgia and Breton. Thus, when Zion discussed the same settlement provisions with Seidel on July 16th and Seidel agreed to them, the settlement among all three parties became a

---

**3.** Comment b to § 32 of the Restatement 2d of Contracts describes examples of circumstances such as the posting of a reward in which it is clear that the offeror is seeking acceptance by performance and not by promise. In this case, it is not clear from the circumstances that the Bank was making an offer for a unilateral contract.

**4.** The Bankruptcy Court never indicated precisely which interpretation of the facts upon which it based its conclusions of law. Thus, this Court presumes that the Bankruptcy Court adopted the proposed interpretations in the appellees' opposing papers to the appeal.

binding contract.[5] The Court concludes that the Bankruptcy Court's finding of a binding final settlement is based upon a plausible set of facts and accordingly rejects the Bank's view of the facts.

### 4. Reasonable Time of Performance

▮▮▮▮ In addition, the Bank contends that the settlement is not a binding contract because Apex Georgia failed to perform its promise to move to abandon the property in the Bankruptcy Court within a reasonable period of time. As a question of fact to be determined by the trial court, reasonability is based on "the subject matter of the contract, the situation of the parties, their intentions, what they contemplated at the time the contract was made, and the circumstances attending the performance of it." *In re United States Air Duct Corp.,* 38 B.R. 1008, 1013 (N.D.N.Y.1984) (quoting *Hills v. Melenbacher,* 23 A.D.2d 803, 258 N.Y.S.2d 243, 244 (4th Dep't.1965)). In light of the substitution of counsel and the need to confer with the individual guarantors, the Court finds that the period of time from July 16, 1991 to September 27, 1991 was not an unreasonable amount of time for Apex Georgia to perform its promise to move to abandon property.

### 5. The Bankruptcy Court's Jurisdiction

▮▮▮▮ The Bank argues that the Bankruptcy Court improperly exceeded its statutory authority by deciding not only that a binding agreement existed between the parties but in addition that the Agreement authorized an order of abandonment and release of the guarantors. The Court is unpersuaded by this argument. A review of the record indicates that when Apex Georgia learned on August 28, 1991, that the bank was attempting to renege on the Agreement, Apex Georgia was forced to move on its own, for an order approving the Agreement as a compromise and settlement pursuant to Bankruptcy Rule 9019 and authorizing the abandonment of the Property pursuant to the Agreement and § 554 of the Bankruptcy Code. The Bank-

ruptcy Court carefully considered its jurisdiction to order the abandonment as well as the release the guarantors pursuant to the Agreement and concluded that because Zion understood and agreed to include the abandonment of the property and the release of the guarantors in the settlement agreement, which the parties were then supposed to present to the Bankruptcy Court for approval, the Bankruptcy Court could treat the approval of the entire agreement, including the request to order the abandonment and release the guarantors, as core matters within the Bankruptcy Court's jurisdiction pursuant to 28 U.S.C. § 157. Tr. at 56–59. In sum, once the Bankruptcy Court ruled that a binding agreement existed between the parties, the Bankruptcy Court's decision to treat as core proceedings the abandonment of the property and the release the guarantees was a proper, efficient, common sense approach and well within the Bankruptcy Court's jurisdiction.

### 6. A Sufficient Writing

▮▮▮▮ Finally, the Bank contends that the letter dated July 16, 1991 does not satisfy the writing required by New York State C.P.L.R. § 2104. State law must be applied to assess the validity of a bankruptcy settlement agreement, *In re Lady Madonna Industries, Inc.,* 76 B.R. 281, 290 (S.D.N.Y.1987), and under New York State laws, a stipulation of settlement is an agreement covered by C.P.L.R. § 2104. *In re Dolgin Eldert Corp.,* 31 N.Y.2d 1, 8, 334 N.Y.S.2d 833, 838–9, 286 N.E.2d 228, 232 (1972). This section states that:

> "An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered."

The Court finds that the letter dated July 16, 1991 is sufficiently explicit and clear to

---

**5.** Restatement 2d of Contracts § 22 provides that mutual assent of all three parties to a contract may be obtained where a second party relays an offer from a first party to a third

party. In this case, the individual guarantors constitute the first party, the Bank is the second party and Apex Georgia and Breton represent the third party.

constitute a writing under C.P.L.R. § 2104. In contrast to the disqualified examples cited by the Bank, the letter from Zion to Seidel does not refer to the final settlement as a proposal or as subject to further review.[6]

For all the above reasons the Order of the Bankruptcy Court is affirmed.

SO ORDERED.

---

**6.** In both *Davidson Pipe Co., Inc. v. Laventhol and Horwath,* No. 84–5192, 1986 U.S.Dist. WESTLAW 2201 (S.D.N.Y., Feb. 11, 1986) and *In re Lady Madonna* at 290, the courts found that C.P.L.R. § 2104 was not satisfied because the proffered letters referred to the settlement as a draft and as a proposed settlement agreement. *In re Stein and Day, Inc.,* 113 B.R. 157, 163 (Bankr.S.D.N.Y.1990), the court also found that C.P.L.R. § 2104 was not satisfied because the cover sheet to the document indicated that the agreement was subject to the approval of a third person.