**In re MISSOURI FLATS ASSOCIATES, a California limited partnership.**

**Bankruptcy No. 287–06868–A–11.
Mto. No. AMT–1.**

United States Bankruptcy Court,
E.D. California.

May 11, 1988.

See also, Bkrtcy., 86 B.R. 633.

Kirk S. Rimmer, Law Offices of Arthur M. Traugh, Sacramento, Cal., for creditor, Bank of Woodland.

David J. Bowie, Bowie & Bruegmann, San Francisco, Cal., for debtor.

## NOTICE OF INTENDED DECISION

LOREN S. DAHL, Chief Judge.

On November 30, 1987, Missouri Flats Associates, a California limited partnership, filed a voluntary petition for bankruptcy under chapter eleven in the United States Bankruptcy Court for the Eastern District of California. A statement of the debtor's financial affairs was filed with the court on January 7, 1988 by debtor's attorney. The statement named Robert W. Hooton and Joseph L. Celoni as the general and sole partners of the debtor.

The sole secured creditor listed on the statement of affairs, the Bank of Woodland, a California banking association (hereinafter "movant" or "Bank of Woodland") filed the above-titled motion to dismiss or to lift the automatic stay on January 6, 1988. A hearing was held on February 1, 1988; KIRK S. RIMMER, ESQ., from the law offices of Arthur Traugh appeared on behalf of the moving party, and DAVID J. BOWIE, ESQ., of Bowie & Bruegmann appeared on behalf of the debtor.

## FACTS

On February 5, 1986 and on April 29, 1986, the Bank of Woodland extended credit to a Dr. Carl C. Markwood and his wife

Marie in the amounts of $138,000 and $304,000, respectively. The first loan was secured by a deed of trust on a parcel of real property in El Dorado County purportedly owned in fee simple by Dr. Markwood and his wife (Declaration of Marilyn Miller, Ex. A). The April 29 loan was also secured by a deed of trust on an adjacent parcel of real property purportedly owned in fee simple by the Markwoods. Both loans were due and payable 6 months after disbursement with a variable interest rate accruing daily at 2% above the prime interest rate. (Declaration of Marilyn Miller, Ex. B).

The Markwoods apparently stopped servicing both debts in July 1986 and official notice of default was recorded by the movants on July 1, 1987. A private trustee's sale was set for November 30, 1987. (Declaration of Marilyn Miller, p. 2).

On November 5, 1987, the Markwoods transferred their interest in the above-mentioned parcels of real property by way of a grant deed to Missouri Flats Associates, hereinafter "debtor". (Motion to dismiss, Ex. B, p. 1). According to the partners, the debtor was, at first, an oral, limited partnership organized before the Markwoods' initial purchase of the property now in dispute for the particular purpose of investing in unimproved real property targeted for development into a new shopping center in El Dorado County, hereafter referred to as the "Gold Rush Plaza Project". (Declaration of Robert Hooton, at p. 2–3).

On November 30, 1987, the day scheduled for the trustee's sale of the real property, debtor filed a chapter 11 petition. Also on that day, the debtor filed a certificate of limited partnership with the Secretary of State, the articles of which were verified on December 7, 1987. (Motion to dismiss, Ex. C).

Subsequent to its filing of the above-titled motion, the Bank of Woodland submitted verified appraisals of the two encumbered parcels which estimate the values to be $202,000 and $273,000, respectively. (Declaration of John McGraw and attached exhibits "B" and "C"). Movant also alleged that as of December 1, 1987, the total amount of liens encumbering the property amounted to $491,853 which results in an alleged negative equity of $16,800. (Declaration of Marilyn Miller, p. 2). The debtor does not contest these calculations.

## DISCUSSION

■ The first argument set forth by the Bank of Woodland is that the petition should be dismissed for lack of a good faith filing, presumably under the implied authority of 11 U.S.C. § 1112(b) which provides in pertinent part that "on request of a party in interest ..., and after notice and a hearing, the court may dismiss a case under this chapter ..., for cause."

Bankruptcy Rule 2002 sets forth the notice requirements for a motion to dismiss:

> "Except as provided in subdivisions (h), (i), and (k) of this rule, the clerk ... shall give the debtor, the trustee, *all creditors* and indenture trustees not less than 20 days notice by mail of ... (5) in ... a chapter 11 reorganization case, the hearing on the dismissal or conversion of a case to another chapter." (emphasis added).

Notwithstanding the fact that debtor's statement of liabilities lists five creditors holding potential claims against the debtor, the records indicate that only the debtor and debtor's counsel were served with the notice of motion and hearing for the motion to dismiss.

Due to movant's failure to provide adequate notice to "all creditors" as required by Rule 2002(a)(5), therefore, the motion to dismiss must be denied until such a time as the due process requirements are satisfied.

■ The Bank of Woodland requests in the alternative that the automatic stay be lifted on the grounds that the debtor filed the petition in bankruptcy in bad faith. Movant relies upon the authority of 11 U.S.C. § 362(d)(1) which provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by

terminating, annulling, modifying, or conditioning such stay

(1) for cause.

Although good faith is a prerequisite to confirmation of a chapter 11 plan (11 U.S.C. § 1129), there is no express provision which precludes the bad faith filing of a bankruptcy petition. Many courts recognize, however, the discretionary power of a bankruptcy court to grant a motion for dismissal or for relief from the automatic stay "for cause" pursuant to 11 U.S.C. §§ 1112(b) and 362(d)(1) where a finding of "bad faith" is made by that court. *In re Arnold,* 806 F.2d 937, 939 (9th Cir.1986); *Matter of Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986); *In re Kemble,* 776 F.2d 802, 807 (9th Cir.1985); *In re Thirtieth Place, Inc.,* 30 B.R. 503 (Bankr. 9th Cir.1983); *In re Yukon Enterprises, Inc.,* 39 B.R. 919, 921 (Bankr.C.D.Cal.1984).

Although the courts generally consider a laundry list of factors to determine whether to lift the stay for lack of a good faith filing (*In re Yukon Enterprises,* 39 B.R. at 921; *In re Thirtieth Place,* 30 B.R. at 505–506), there is a general consensus that bad faith will be found only when the debtor's actions "clear(ly) abuse" the avowed purpose of the bankruptcy laws to "effect a speedy efficient reorganization, on a feasible basis." *In re Arnold,* 806 F.2d at 939, citing *In re Thirtieth Place,* 30 B.R. at 505 (quoting *In re Loeb Apartments, Inc.,* 89 F.2d 461, 463 (7th Cir.1937)).

The Ninth Circuit Bankruptcy Appellate Panel found bad faith under the facts in *In re Thirtieth Place.* There the court found that the debtor's primary purpose in filing its chapter 11 petition was to prevent foreclosure upon its sole asset, a recently acquired and heavily encumbered parcel of real property. The debtor was found to have had no other business dealings prior to obtaining an interest in the property, no employees, no business activity, and no prospects for future business activity on the date of filing. In addition, the court found that the debtor had no equity in the property. 30 B.R. at 506.

The court subsequently concluded that the sole motive of the debtor in filing its petition was to "subvert the legitimate rights of creditors in the absence of any reasonable expectations that the debtor can successfully reorganize." 30 B.R. at 506. Thus, the petition for relief from the automatic stay was granted.

Considering the facts of the case presently before it, this court perceives neither an intent to subvert the movant's rights, nor an unreasonable expectation that the debtor will successfully rehabilitate itself.

Unlike the court in *In re Thirtieth Place,* this court is not convinced that the debtor is newly organized and without prior business experience. The debtor has submitted verified declarations on behalf of its two partners which unequivocally contend that not only did the debtor exist prior to its succession in interest to the disputed property, but that it invested almost $345,000 into the original purchase of that and other property which it intended to develop into the Gold Rush Plaza. (Declaration of Robert Hooton in opposition to the motion for relief from stay, p. 2–3; Declaration of Joseph Celoni in opposition to the motion, p. 1).

Furthermore, this court remains to be persuaded that the debtor lacks the means or intention to successfully rehabilitate itself. Through its counsel, the debtor has made an offer to the movant to "bring current interest on the loans of the movant bank and to maintain current interest payments" during the time necessary to assemble the real property necessary to complete the Gold Rush Plaza shopping center project. (Opposition to motion for relief from stay, p. 7).

In addition, the debtor's partners have shown a willingness to contribute all of the cash necessary to capitalize a new partnership between the debtor and another ongoing limited partnership apparently known as "Gold Rush Plaza" for the purpose of developing the real property as well as other property to be purchased for the proposed shopping center. (Declaration of Robert Hooton, p. 3). Debtor would apparently have us believe that this future partnership would be willing and able to satisfy the movant's claims to the property once

the project's properties are assembled. (See generally, Declaration of Robert Hooton, p. 3–4, and opposition to motion for relief, p. 7).

This court is aware that the debtor's declarations are unsupported by any proof other than the declarants' affirmations of the statements under oath. It is also evident, however, that there is nothing in the record which expressly impeaches the debtor's allegations. Although the alleged bad faith has not been clearly shown and the court is unwilling at this time to lift the stay for cause, nothing precludes movant from renewing its motion at a later date.

■ Finally, the movant argues that the stay should be lifted pursuant to 11 U.S.C. § 362(d)(2) because "A) the debtor does not have an equity in such property; and B) such property is not necessary to an effective reorganization."

The initial burden of proving the debtor's equity or lack thereof in the the property is upon the moving party. 11 USC § 362(g)(1). The movant in this case offered a verified appraisal into evidence which opined that the fair market value of the combined properties in dispute was $475,000. (Declaration of John McGraw, Exhibits "B" and "C"). Movant also declared that the total amount of the liens as of December 1, 1987 was $491,853. (Declaration of Marilyn Miller, p. 2).

Although it did not dispute the amount of the liens, the debtor responded by offering three estimates on the value of the property: an unverified appraisal; an expired contract for sale of one of the parcels; and, a verbal update on the initial appraisal. The alleged verbal update is clearly inadmissible as hearsay and the other two estimates run afoul of Local Rule 21(E) which provides in pertinent part,

E. *Use of Affidavits or Declarations.* Factual contentions involved in motions shall be initially presented and heard upon affidavits or declarations under penalty of perjury .... Affidavits failing to comply substantially with all of the foregoing requirements may be stricken in whole or in part by the judge. (Local Rules of Practice, United States

Bankruptcy Court, Eastern District of California, Sacramento Division).

■ Because the debtor failed to have the appraisals verified by declarations under penalty of perjury, the appraisals will be disregarded as inadmissible hearsay. Thus, the debtor failed to rebut the movant's showing that the debtor has no equity in the property now in dispute.

■ A showing of lack of equity by itself, however, will not compel the lifting of the stay unless the debtor, in addition, fails to prove that the property is necessary to an effective reorganization. 11 U.S.C. §§ 362(d)(2), 362(g)(2).

■ The debtor must prove both that an "effective" reorganization is possible, that the property is necessary to that end, and that the debtor will be able to propose a plan within a reasonable amount of time. *In Re Jug End in the Berkshires, Inc.,* 46 B.R. 892, 902 (Bankr.D.C.Mass.1985). Although at this point it is *not* clear that the debtor can effectively organize or that it could propose a confirmable plan, the debtor has presented to this court a workable theory of rehabilitation and should be allowed a reasonable amount of time to propose a plan of reorganization. *In Re 6200 Ridge Inc.,* 69 B.R. 837, 843 (Bankr.E.D.Pa. 1987) (discrepancies over whether the property is necessary to an effective reorganization should be resolved in favor of the debtor during the early stages of bankruptcy for the purposes of determining whether the stay should be lifted).

Finally, this court believes that the debtor's offer to bring and keep the interest current on the Markwood loans would adequately protect movant's interest in the property pending confirmation of a plan or, if necessary, dismissal of the case, or a lifting of the stay. Movant's request for sanctions pursuant to Bankruptcy Rule 9011 and Fed.R.Civ.Proc. 11 is denied as no finding of bad faith has been made.

The foregoing shall constitute findings of fact and conclusions of law.