**In re Diana B. ROBERTS, Debtor.**

**Bankruptcy No. 97–00855–C.**

United States Bankruptcy Court,
N.D. Iowa.

June 18, 1997.

Janet Hong, Cedar Rapids, IA, for Debtor.

Wesley Huisinga, Cedar Rapids, IA, for Norwest Bank.

### ORDER RE VALUATION HEARING

PAUL J. KILBURG, Bankruptcy Judge.

On May 29, 1997, the above-captioned matter came on for hearing pursuant to assign-

ment. Debtor appeared by Attorney Janet Hong. Creditor Norwest Bank appeared by Attorney Wesley Huisinga. The matter before the Court is a valuation hearing regarding Debtor's automobile. The parties presented their evidence and the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), (L).

### FINDINGS OF FACT

Debtor Diana B. Roberts filed her Chapter 13 Petition and her proposed Plan on March 27, 1997. In her Plan, Debtor acknowledges that her 1990 Cadillac is secured to Norwest Bank of Iowa, NA and that the payments were in arrears and default. Debtor's Plan proposes to pay $800 in back payments to cure the default as well as monthly payments of $146.84 over a period of 30 months, for total payments of $4,405.11. Norwest Bank filed the only objection to the Plan which came on for confirmation hearing on May 7, 1997. The Bank objects that Debtor listed the value of her 1990 Cadillac Seville at $3,800 when the fair market book value of this automobile is $9,650.

The Court treated the confirmation hearing on May 7, 1997 as a preliminary hearing in light of the Bank's objection. The Court noted at that time the Plan was tentatively confirmable subject to a determination of the value of the Cadillac. The Court indicated that a valuation hearing would be set and, depending upon the value determined by the Court, the Plan would either be confirmed or further hearings would be held on the confirmation issue. The valuation hearing was scheduled for May 29, 1997.

At the time of hearing on May 29, Debtor was not present to provide testimony as to value. Debtor's counsel tendered four exhibits (Exhibits A through D). Exhibit A and Exhibit B are affidavits titled "Declaration of Appraisal". These affidavits are provided by two different auto dealerships setting forth their estimates of the value of Debtor's Cadillac.

Exhibit C is a document which provides the estimated value of this automobile by a used car manager at an auto dealership. This document is not in the form of an affidavit, is unverified, and is simply signed by the individual appraising the vehicle. Exhibit D is a similar document filled out on a form provided by a Cedar Rapids auto dealership. This form is captioned "Trade–In Appraisal" and sets forth an appraised value for this automobile. It is unverified and is signed by the auto dealer.

Counsel for Debtor tendered these four documents as Debtor's evidence of the value of the 1990 Cadillac Seville. Counsel for the Bank objected that these documents are hearsay and lack foundation. The Court sustained the hearsay objection to these documents. Debtor offered no further evidence.

Norwest Bank was provided the opportunity to present evidence on valuation. The Bank presented no live testimony but proffered Exhibit 1. This exhibit consists of copies of portions of the NADA Official Used Car Guide (Midwest Edition, February, 1997). The Bank tendered Exhibit 1 without supporting testimony and without further foundation. Debtor objected to admission of this document on the basis of hearsay and lack of foundation. The Bank asserts this is a self-authenticating document and further foundation is not required for admissibility. It further argues that the NADA Guide is a record upon which general reliance is made, making it admissible without further showing under Rule 803(17) of the Federal Rules of Evidence.

Based upon the Court's ruling concerning Debtor's affidavits and other exhibits, Counsel for Debtor requested a continuance to allow the presentation of additional evidence and witnesses. Continuance was resisted by Counsel for the Bank.

### *STANDARD FOR VALUING SECURITY INTEREST*

Three standards have been applied by various courts to determine valuation in Chapter 13 confirmation proceedings under § 506(a). These are the foreclosure-value standard, the replacement-value standard, and a standard which places the appropriate value at a mid-point between foreclosure value and replacement value. The Eighth Circuit has held that the appropriate standard is

the replacement-value approach. *In re Trimble,* 50 F.3d 530, 531–32 (8th Cir.1995). This Court has previously used the replacement-value method. *In re Simon,* No. 94–21591KD, slip op. at 4 (Bankr.N.D.Iowa Dec. 7, 1995).

The United States Supreme Court, on June 16, 1997, rejected the foreclosure-value standard as well as the standard which utilized the mid-point value between replacement and foreclosure value. The Supreme Court embraced the replacement-value approach utilized in this Circuit. *Assocs. Commercial Corp. v. Rash,* —— U.S. ——, ——, 117 S.Ct. 1879, 1886, 138 L.Ed.2d 148 (1997). Therefore, the standard utilized by this Court continues to be the replacement-value test as endorsed by the Eighth Circuit and previously utilized by this Court.

## BURDEN OF PROOF

■ The Court set this matter for a valuation hearing in response to Debtor's proposed Chapter 13 Plan and the Bank's objection to the treatment of its claim in the plan. Generally, a creditor's proof of claim constitutes prima facie evidence of the validity and amount of its claim. *In re Brown,* 82 F.3d 801, 805 (8th Cir.1996); Fed. R. Bankr.P. 3001(f). This presumption of the validity of the proof of claim places the burden of producing evidence to rebut the presumption on Debtor. *Id.* However, the ultimate risk of nonpersuasion as to the allowability of the claim resides with the creditor. *Id.*

In *In re 183 Lorraine St. Assocs.,* 198 B.R. 16, 27 (E.D.N.Y.1996), the court applied the Rule 3001(f) presumption to allocate the burdens of proof and persuasion in a valuation hearing. It stated that if an objection is made to the characterization of a claim as fully secured, the defending creditor has the ultimate burden of persuasion. *Id.* Likewise, the court in *In re Southmark Storage Assocs. Ltd. Partnership,* 130 B.R. 9, 10 (Bankr. D.Conn.1991), held that the objector (the debtor) has the initial burden to overcome the presumption of the validity of a proof of claim, but the ultimate burden of persuasion is on the creditor to prove by a preponderance of the evidence the value of the collateral which secures its claim.

Older case law considered the burden of proof in valuing a mobile home in response to an objection to confirmation in a Chapter 13 case. *In re Mendenhall,* 54 B.R. 44, 45 (Bankr.W.D.Ark.1985). The parties each submitted written appraisals which the court found to be of very little value to its determination. *Id.* The court concluded that, in light of the record, the burden of proof would be determinative on the issue of valuation of the collateral mobile home. *Id.* It held that the objecting creditor had the burden of persuasion to sustain its objection. *Id.* at 47.

Other courts have held that § 1325 places the burden on the debtor to prove that the requirements for confirming a Chapter 13 plan have been met. *Tillman v. Lombard,* 156 B.R. 156, 158 (E.D.Va.1993) (regarding good faith requirement of § 1325(a)(3)); *In re Weisser,* 190 B.R. 453, 454 (Bankr. M.D.Fla.1995) (regarding basic confirmation requirements). In *Mendenhall,* the court stated that if § 1325 places any burden on the debtor it is to rebut any evidence introduced to support an objection to confirmation. 54 B.R. at 46. The burden of production may then shift from opponent to opponent, but the burden of persuasion remains with the objecting creditor. *Id.* at 47.

■ The Court concludes that the presumption of the prima facie validity of the Bank's claim in Rule 3001(f) applies to this valuation hearing arising in the context of Chapter 13 plan confirmation. Debtor has the burden of coming forward with sufficient evidence to rebut that presumption. If Debtor presents sufficient evidence to rebut this presumption, the burden then transfers to the creditor to assume the ultimate burden of persuasion on the issue of the value of the collateral securing its claim.

## DEBTOR'S EVIDENCE

■ As previously discussed, Debtor's proposed evidence consists of four appraisals, two of which were attached to affidavits and two of which were unverified. The Court sustained the Bank's hearsay objections and

the appraisals were not admitted as evidence. Excluding affidavits as hearsay is not an abuse of discretion, where the related parties are not present to authenticate the documents and for cross-examination. *Brown,* 82 F.3d at 806 (excluding debtors' affidavits and answers to interrogatories in hearing on objection to proof of claim). "The most frequent type of opinion evidence encountered in bankruptcy proceedings is in the form of an appraisal, which generally will not qualify as a business record for the purposes of Rule 803(6)." Barry Russell, *Bankruptcy Evidence Manual* § 803.18, at 617 (1997).

> In other words, the report of an appraiser is not admissible by merely showing that the appraiser is in the business of making appraisals. There must be the opportunity to ascertain the qualifications of the appraiser and to otherwise cross-examine [the appraiser].

*Id.* at 618.

In *In re Applin,* 108 B.R. 253, 261 (Bankr. E.D.Cal.1989), the court considered whether to admit a real estate appraisal as evidence. It found that no hearsay exception applied and refused to admit the appraisal in support of a motion for relief from stay. *Id.* The court noted that the appraisal may have been, admissible if it was supported by an affidavit or deposition testimony. *Id.;* Fed. R.Civ.P. 43(e) (applicable to bankruptcy cases through Fed. R. Bankr.P. 9017). In the end, the court refused to revisit the motion to give the creditor an opportunity to make a better evidentiary record. *Id.* at 262.

> In a routinized area, such as bankruptcy motion practice, one easily loses sight of some of such basics as the need to make out a prima facie case by competent evidence. Bankruptcy litigation is no different than any other federal litigation practice in this respect. Although such evidentiary questions as the use of appraisals arise more frequently in bankruptcy courts than elsewhere because the issue of value of property is pervasive in bankruptcy, that does not excuse compliance with the Federal Rules of Evidence.

*Id.* See also In re Wilson, 96 B.R. 301, 303 (Bankr.E.D.Cal.1989) (refusing to accept as

evidence affidavit by attorney regarding mailing of complaint); *In re Missouri Flats Assocs.,* 86 B.R. 634, 638 (Bankr.E.D.Cal. 1988) (ruling that unverified appraisals were inadmissible hearsay).

Federal Rule of Evidence 801(c) defines hearsay as a statement made outside of Court and presented in Court to prove the truth of the matter asserted. In this case, Debtor presents these various appraisal documents in order to prove the fair market value of the automobile in question. Clearly, these exhibits are hearsay and are inadmissible unless they fall within some recognized exception to the hearsay rule. As recently confirmed by the Eighth Circuit in *Brown,* affidavits which are tendered as substantive evidence when the affiant is not present for cross-examination are inadmissible hearsay. 82 F.3d at 806. This Court is aware of no exception to the hearsay rule which would authorize the admissibility of these documents. As such, the Court reaffirms that the documents presented as evidence by Debtor are inadmissible hearsay as properly objected to by Creditor. Debtor presented no admissible evidence at the hearing which can be considered part of this record.

This Court has a Local Rule setting forth the procedure applicable to valuation hearings. L.B.R. 24. Rule 24(1) requires the parties to a valuation dispute to file and serve appraisals 7 days prior to the valuation hearing, with affidavits of the appraisers. Also required is a separate affidavit of the attorney stating that the offering party has attempted to resolve any differences over valuation of the property. Rule 24(1)(b). Failure to comply with these provisions "may result in the entry of an order prohibiting the party who has violated the rule from having their appraisal introduced into evidence." Rule 24(4). A similar rule requiring affidavits was applied in *Missouri Flats* in which the court concluded that because the debtor had failed to have the appraisals verified they would be disregarded as inadmissible hearsay. 86 B.R. at 638. Local Rule 24 provides additional grounds for excluding Debtor's exhibits from the record.[1]

1. Though this Local Rule envisions the use of     affidavits in the valuation process, they are only

## THE BANK'S EVIDENCE

The Bank has not introduced an appraisal of Debtor's Cadillac. Its proof of claim asserts a secured claim of $7,485.33, which includes arrearages and other charges of $854.19. Exhibit 1 offered by the Bank consists of copies of the February 1997 NADA valuations. This lists values for Debtor's Cadillac as follows:

| | |
|---|---|
| Trade-in value | $7575 |
| Loan value | 6825 |
| Retail value | 9650 |
| | |
| Deduction for high mileage | $ 850 |

Debtor objected to admission of Exhibit 1 as hearsay and for lack of foundation. This Court has previously discussed this issue on a limited basis in *In re Specht*, No. 96–21022KD, slip op. at 2 (Bankr.N.D.Iowa, Feb. 26, 1997). In its ruling, the Court stated:

> Much of the valuation testimony is based upon NADA Blue Book values, adjusted by mileage and condition of the vehicle. "[When t]here's been a dispute in testimony about the value of [ ] a vehicle ... [e]verybody looks at [publications used in the automobile industry] as a first reference.... [T]he court also knows [they are] not the final reference, [they are] not the last word."

*Id.* (citation omitted).

A distinction exists between *Specht* and the present case in that the creditor in *Specht* had an appraiser present at hearing whose qualifications were recognized by the Court and who testified concerning the NADA Blue Book and relied upon the Blue Book in making his determination as to value. In the present case, no such expert is presented.

■ The issues presented are 1) whether the NADA Blue Book can stand on its own as an admissible exhibit and as substantive evidence without further foundation and 2) whether a recognized exception exists to the hearsay rule which would make this exhibit admissible. Hearsay is a statement made out of Court and tendered in Court to prove the matter asserted. Exhibit 1 is unquestionably presented to establish the value of this 1990 Cadillac and is, therefore, hearsay. In order for the exhibit to be admissible, it must come within one of the recognized exceptions to the hearsay rule.

Federal Rule of Evidence 803(17), provides that market reports or compilations generally relied upon by the public or by persons in particular occupations are not excluded by the hearsay rule. The NADA Blue Book has been found to fit within this exception to the hearsay rule. *In re Byington*, 197 B.R. 130, 138 (Bankr.D.Kan.1996). Another court has stated that the NADA publication is universally recognized as relevant and material evidence of the value of used cars. *In re Marshall*, 181 B.R. 599, 604 n. 9 (Bankr.N.D.Ala. 1995). NADA values are widely used in the auto industry and the courts to simplify and expedite the valuation process. *In re Johnson*, 165 B.R. 524, 529 (S.D.Ga.1994). *See also In re Wierschem*, 152 B.R. 345, 347 (Bankr.M.D.Fla.1993) (taking judicial notice of the NADA values). Some bankruptcy courts have adopted local rules stating that for purposes of Chapter 13 confirmation, values of vehicles will be the average between the NADA trade-in and retail values. *In re Valenti*, 105 F.3d 55, 58 (2d Cir.1997) (considering local bankruptcy rule of N.D.N.Y.); *In re Sharon*, 200 B.R. 181, 195 (Bankr.S.D.Ohio 1996).

■ Although these courts conclude that NADA Blue Book values constitute admissible evidence for purposes of valuation, they also recognize that the NADA values are not necessarily conclusive. Valuation of collateral is governed by § 506(a) which sets forth a flexible standard. *Valenti*, 105 F.3d at 62. Using an average of NADA values for a particular vehicle is a good guidepost which can account for the two considerations set out in § 506(a). *Id.* The NADA guidelines constitute some evidence of the value but are not conclusive. *In re Chrapliwy*, 207 B.R. 469, 474 (Bankr.M.D.N.C.1996). The NADA guide should be used in conjunction with expert testimony; use on its own is not favored. *Byington*, 197 B.R. at 138. Exclusive reliance on NADA's industry averages

---

used as substitute direct evidence to expedite the process. The affiant is required to be present for cross-examination, thereby eliminating the hearsay objection. L.B.R. 24(3).

may contradict the court's duty under § 506(a) to value the specific collateral in the case before it. *Johnson,* 165 B.R. at 529.

■ This Court concludes that the Bank's Exhibit 1, portions of the NADA guide, is admissible as evidence. This exhibit produces a parameter for valuing Debtor's 1990 Cadillac Seville though the Court recognizes that values can vary widely from auto to auto based on the vehicle's condition.

The parties dispute the value of a 1990 automobile that apparently has high mileage. The Bank appears to concede the automobile has high mileage although it is not established in the record. Nothing in the record documents the physical condition of the automobile or even what it looks like. The parties have failed to produce any witness who can actually talk about this car and, in this case, even Debtor did not appear to physically describe the automobile.

Based upon the state of the record, the Court concludes the burden of proof is determinative. Debtor has the burden to rebut the prima facie validity of the Bank's proof of claim. Debtor has failed to offer any admissible evidence. Debtor, therefore, has failed to carry her burden to rebut the Bank's proof of claim which states its claim is secured. The Bank's claim, therefore, establishes the secured value of this automobile.

The Bank's total claim is $7,485.33. The proof of claim states that $854.19 of this consists of arrearages and other charges. Debtor's Plan provides for payment of $800 to cure the default on this claim. The Plan must be amended to change that amount to $854.19. The remainder of the amount listed on the proof of claim totals $6,631.14. Because Debtor has offered no evidence to rebut the Bank's assertion that this amount is fully secured by the 1990 Cadillac Seville, the Court concludes the Cadillac's value is equal to this amount. The parameters of value indicated by the Bank's Exhibit 1 support the Proof of Claim's prima facie validity. Debtor's plan must provide for payment of the default amount of $854.19 plus payment of the Bank's remaining claim of $6,631.14, which is fully secured by Debtor's 1990 Cadillac.

## MOTION TO CONTINUE

■ Debtor's attorney moved for a continuance to allow the presentation of additional evidence. Whether to grant a request for a continuance rests in the sound discretion of the Bankruptcy Court. *Wachovia Bank v. Apex Tech of Georgia, Inc.,* 144 B.R. 649, 652 (S.D.N.Y.1992); *Havee v. Belk,* 775 F.2d 1209, 1223 (4th Cir.1985). Two basic factors in considering a continuance are 1) whether the additional evidence would be valuable enough to warrant delay of the judicial process and burden on other parties and 2) whether the moving party has acted with proper diligence in efforts to timely present the evidence. *Wachovia Bank,* 144 B.R. at 649. This Court has refused to grant a continuance to allow a party additional time to prepare where no unusual or exceptional circumstances existed warranting continuance. *In re Good,* 131 B.R. 121, 127 (Bankr. N.D.Iowa 1990).

■ The Court concludes that continuance is not warranted. At the time scheduled for the confirmation hearing, the Court indicated that the parties should be ready with their valuation evidence at the subsequent valuation hearing. Debtor did not follow the procedure set out in Local Rule 24. Debtor failed to appear in person at the valuation hearing and did not make her appraisers available for live testimony. While a delay to allow additional evidence may shed additional light on the values in question, the Bank objects to a continuance. The opposing party's rights are also a valid consideration in granting or denying a continuance. Granting a continuance may prejudice the rights of the Bank. No unusual circumstances exist which warrant delay in the judicial process.

**WHEREFORE,** Debtor's Motion to Continue is DENIED.

**FURTHER,** Debtor's objection to admission of the Bank's Exhibit 1, copies of the NADA guidelines, is OVERRULED.

**FURTHER,** the value of Debtor's 1990 Cadillac Seville equals the amount of the Bank's secured claim of $6,631.14. Debtor's

332

plan must provide for full payment of this claim pursuant to § 1325(a)(5)(B).

**FURTHER**, the amount required to cure default to the Bank is $854.19. Debtor's plan must also provide for full payment of this amount pursuant to § 1325(a).