# United States Bankruptcy Appellate Panel
## FOR THE EIGHT CIRCUIT

_____

No. 00-6105WM

_____

In re: G. Eric Barnes      *

            Debtor      *

*

Victory Denise Boone      *

            Appellant      *

            v.      *

*

G. Eric Barnes      *

            Appellee      *

Appeal from the United States Bankruptcy Court for the Western District of Missouri

_____

Submitted: August 7, 2001
Filed: September 10, 2001

_____

Before SCOTT, DREHER AND McDONALD[1], Bankruptcy Judges

_____

McDONALD, Bankruptcy Judge

---

[1] The Honorable David P. McDonald, Chief Judge, United States Bankruptcy Court for the Eastern District of Missouri sitting by designation.

Victory Denise Boone ("Plaintiff") appeals from the judgment of the bankruptcy court[2] holding that the Plaintiff failed to establish that G. Eric Barnes ( "Debtor") was intoxicated at the time of an accident with Plaintiff. For the following reasons, we affirm the bankruptcy court's judgment.

I.

The Plaintiff and the Debtor were involved in a three car accident on Interstate 35 in North Kansas City, Missouri at approximately 3:00 A.M. on the morning of December 14, 1997. The Debtor arrived at the Beaumont Club at approximately midnight the morning of the accident. The Debtor stayed at the Beaumont Club for approximately two hours and testified that he consumed three twelve ounce beers during that time. The Debtor left the Beaumont Club around 2:15 A.M. to go to the Harrah's gaming boat. However, once he arrived at Harrah's, Debtor elected not to gamble because he had very little cash and returned home.

At approximately 3:00 A.M. on his way home from Harrah's, Debtor lost control of his vehicle on an entrance ramp to southbound Interstate 35. Debtor's vehicle slid across all lanes of southbound Interstate 35 and came to rest in the far left lane after colliding with the median. Before Debtor could restart his vehicle, Plaintiff, who was traveling southbound on Interstate 35, collided into his vehicle. Apparently, Plaintiff did not see Debtor's vehicle prior to the collision and therefore did not apply her brakes. A third vehicle collided with Debtor's vehicle immediately after the initial collision between Plaintiff and Debtor.

Debtor suffered facial lacerations and contusions as the result of the accident and Plaintiff sustained a severe leg injury. Both Plaintiff and Debtor were transported

---

[2] The Honorable Arthur B. Federman, Chief Judge, United States Bankruptcy Court for the Western District of Missouri.

to hospitals for treatment of their respective injuries. A passenger in Plaintiff's vehicle, Samantha Walker, died at the scene of the accident.

The initial State Trooper on the scene of the accident, Corporal P.R. Davis, interviewed Debtor in the ambulance prior to the ambulance transporting Debtor to the hospital. Corporal Davis questioned Debtor as to whether he had been drinking and Debtor responded in the negative. Corporal Davis also reported that the only odor he could detect from Debtor was that of blood. The second State Trooper on the scene, Corporal M.W. Cross, asked Plaintiff if she had been drinking that night and Plaintiff admitted that she had consumed a couple of drinks during the course of the evening.

Debtor arrived at North Kansas City Hospital at approximately 4:00 A.M. The hospital's records indicate that Debtor was spontaneous, oriented and was able to obey commands. Also, the records indicate that hospital personnel did not detect alcohol on Debtor's breath.

The reporting State Trooper, D.S. Nace, arrived on the scene of the accident after both Plaintiff and Debtor had been transported to the hospital. Corporal Davis and Trooper Nace arrived at North Kansas City Hospital at approximately 6:00 A.M. to interview Debtor. Trooper Nace reported that he detected the odor of alcohol on Debtor's breath as he was interviewing him. Trooper Nace also stated that the Debtor seemed confused and dazed and that he was unable to recall the facts relating to the accident. Trooper Nace also questioned Debtor if he had been drinking prior to the accident and Debtor responded that he had a "few drinks on the boat".

Trooper Nace, believing that the Debtor may be intoxicated, decided to administer a field sobriety test to Debtor. However, because Trooper Nace was uncertain of the extent of Debtor's injuries, he determined that he could only administer the horizontal gaze nystagmus ("HGN") test. Although the HGN test is

3

ideally administered with the subject standing directly in front of the person administering the test, Trooper Nace administered the HGN test with Debtor lying down because of his injuries. Trooper Nace testified that Debtor presented all six indications of intoxication in the HGN test.

Trooper Nace now believed that the Debtor was in fact impaired based on the smell of alcohol on Debtor's breath and the results of the HGN test. Trooper Nace placed Debtor under arrest for careless and imprudent driving and requested that Debtor submit to a blood alcohol test. Debtor complied with Trooper Nace's request and submitted to a blood alcohol test, which indicated that Debtor has a blood alcohol content ("BAC") of .05% by volume at 6:15 A.M.[3]

Trooper Nace filed a statement of probable cause seeking to charge the Debtor with involuntary vehicular manslaughter for the death of Ms. Walker on March 5, 1998, indicating that he believed that Debtor was intoxicated at the time of the accident. Based on Trooper Nace's statement, the prosecuting attorney of Clay County Missouri charged Debtor with involuntary vehicular manslaughter for the death of Ms. Walker. Debtor entered a plea arrangement with the prosecuting attorney whereby the Debtor agreed to plead guilty to careless and imprudent driving, a class A misdemeanor, in exchange for the prosecutor dismissing the felony involuntary vehicular manslaughter charge. The Circuit Court of Clay County, Missouri sentenced Debtor to one year imprisonment on February 4, 1999 based on the plea agreement.

Plaintiff filed a negligence action against the Debtor in the Circuit Court of Jackson County, Missouri on March 17, 1998, seeking to recover for the injuries she

---

[3] The Debtor argues on appeal that Plaintiff failed to demonstrate that Trooper Nace administered the BAC test in accordance with Missouri law. Debtor failed, however, to raise this objection at trial. Accordingly, the Debtor failed to preserve this issue for appellate review. Peerless Corp. v. United States, 185 F.3d 922, 925 (8th Cir. 1999).

suffered in the accident.  Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on February 7, 2000.  Plaintiff filed this adversary proceeding seeking a determination that any damages she may be awarded in her state court action are nondischargeable pursuant to 11 U.S.C. §529(a)(9).

After a trial on Plaintiff's adversary complaint, the bankruptcy court entered judgment on September 20, 2000, in favor of the Debtor.  The bankruptcy court determined that Plaintiff failed to meet her burden of proof in demonstrating that Debtor was intoxicated under Missouri law at the time of the accident.  Plaintiff appeals from the bankruptcy court's judgment, contending that the bankruptcy court erred in finding that Plaintiff failed to meet her burden of proof and that the bankruptcy court applied the incorrect burden of proof.  We affirm.

II.

We will not set aside the bankruptcy court's findings of fact unless those findings are clearly erroneous.  Fed. R. Bank. P. 8013.  A finding is clearly erroneous if, although there is evidence to support it, after examining the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made.  Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).  When reviewing the record, we must also give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses.  Fed. R. Bank. P. 8013.  We will review the bankruptcy court's determination of questions of law *de novo.*  Holiday v. Kline (In re Kline), 65 F.3d 749, 750 (8th Cir. 1995).

The bankruptcy court's finding that the Debtor was not legally intoxicated at the time of the accident is a  question of fact that we review under the clearly erroneous standard.  Jones v. Hager (In re Jones), 80 B.R. 974, 976 (W.D. Mo. 1987).  The question of whether the bankruptcy court applied the correct burden of proof is a question of law that we will review *de novo*.  Internal Revenue Service v. Ford (In re Ford), 194 B.R. 583, 588 (S.D. Ohio 1995).

Plaintiff first argues that the bankruptcy court's factual conclusion that the Debtor was not intoxicated under Missouri law at the time of the accident was clearly erroneous.

## A. Application of Missouri State Law to Resolve Substantive Issues

Section 523(a)(9) of the Bankruptcy Code prevents the discharge of any debt for personal injury caused by the Debtor's operation of a motor vehicle, if such operation was unlawful because of the Debtor's intoxication. 11 U.S.C. § 523(a)(9). When determining whether the debtor was unlawfully operating a vehicle while intoxicated for purposes of section 523(a)(9), the bankruptcy court must apply state substantive law. Whitson v. Middleton (In re Middleton), 898 F.2d 950, 952 (4th Cir. 1989).

Under Missouri law, a person commits the crime of driving while intoxicated if he operates a motor vehicle while in an intoxicated condition. Mo. Rev. Stat. § 577.010.1. A BAC of .10% or more by weight in the person's blood stream is *prima facie* evidence of intoxication. Mo. Rev. Stat. § 577.037.1. If a BAC test result shows that the person's BAC is less than .10% by weight, then the court must dismiss the charge unless there is evidence that: (1) the BAC test is unreliable because of the passage of time between the operation of the vehicle and the administration of the test; or (2) there is substantial evidence of intoxication from physical observation of witnesses or an admission from the person. Mo. Rev. Stat. §§ 577.037.5(1) and 577.037.5.(3).

Here, the Debtor's BAC three hours after the accident was .05% by weight. Plaintiff argues that the bankruptcy court's finding that Debtor was not legally intoxicated is clearly erroneous for two reasons. First, Plaintiff contends that she produced uncontroverted expert evidence that the BAC test result was unreliable

because of the lapse of three hours between the accident and the administration of the BAC test. Second, Plaintiff asserts that Trooper Nace's observation of the Debtor at the hospital, including the results of the HGN test, constitutes substantial evidence of Debtor's intoxication. We disagree with both of Plaintiff's arguments.

*B. Debtor's BAC Level*

At trial, Trooper Nace testified that he believed the dissipation rate of alcohol in the blood stream accepted by Missouri courts is .02% per hour. The application of a dissipation rate of .02% per hour would result in a Debtor having a BAC of .11% at the time of the accident, which is over the presumptively intoxicated limit in Missouri. Trooper Nace based his testimony solely on his experience in working with prosecutors in criminal cases. The bankruptcy court held that this testimony was not expert testimony. Plaintiff argues on appeal that this testimony by Trooper Nace constitutes expert testimony that conclusively demonstrated that the Debtor had a BAC in excess of .10% at the time of the accident.

As an initial observation, both parties analyzed the evidentiary questions presented in this appeal by applying Missouri law. Although the bankruptcy court must apply state law to resolve the substantive issues under section 523(a)(9), the Federal Rules of Evidence apply in all proceedings under the Bankruptcy Code, including adversary proceedings. Fed. R. Bankr. P. 9017; Fed. R. Evid. 1101(a). Thus, even when the bankruptcy court applies state law to resolve substantive issues, it must apply the Federal Rules of Evidence to resolve evidentiary questions. See Hirsch v. Lopreato (In re Colonial Realty Co.), 209 B.R. 819, 822 (Bankr. D. Conn. 1997) (applying the Federal Rules of Evidence to resolve evidentiary issues while applying Connecticut law to address the substantive fraudulent conveyance issue); See also Sprynczatyk v. General Motors Corp., 771 F.2d 1112, 1122 (8th Cir. 1985) (holding that in general questions of admissibility of evidence are governed by federal law in cases where state substantive law applies). Accordingly, the Federal Rules of

Evidence, not Missouri state law, govern the resolution of evidentiary questions here.

Fed. R. Evid. 702 governs the admissibility of expert testimony. At the time of trial, Rule 702 stated that: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."[4] The analysis of the admissibility of proffered expert testimony under Rule 702 centers on whether the reasoning or methodology underlying the testimony is reliable and whether the reasoning or methodology has been properly applied to the facts in issue. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993).

The proponent of the proffered expert testimony must establish by a preponderance of the evidence that it should be admitted into evidence under Rule 702. Id. at 593 n.10. Thus, the proponent of the proffered testimony must establish the proper foundation that the proposed expert has the sufficient expertise, training, education or knowledge to testify as an expert on the issue in dispute. Weisgram v. Marley Co., 169 F.3d 514, 519 (8th Cir.) cert. granted on other grounds, 527 U.S. 1069 (1999) aff'd, 528 U.S.982 (2000). Also, a trial court has wide discretion in admitting proffered expert testimony under Rule 702 and we will not disturb its ruling absent an abuse of that discretion. Bosley v. Excel Corp., 165 F.3d 635, 640 (8th Cir. 1999).

Plaintiff asserts that under Missouri law, a law enforcement officer who has sufficient opportunity to observe the person may testify as an expert witness. See

---

[4] Rule 702 was amended effective December 1, 2001, to explicitly incorporate the reliability requirement reflected in the Supreme Court's holding in Daubert and its progeny. However, because the trial occurred prior to the effective date of the amendment, we will apply the prior version of Rule 702. See United States v. Edmonds, 69 F.3d 1172, 1175 (D.C. Cir. 1995).

State v. Teaster, 962 S.W.2d 429, 431 (Mo. Ct. App. 1998). Apparently, Plaintiff is arguing that because Troop Nace is qualified to testify as an expert as to his observation of Debtor, he may testify as an expert on any issues concerning the Debtor's purported intoxication.

A trial court, under Rule 702, may admit the testimony of a properly trained law enforcement official on the issue of whether a person is intoxicated based on the officer's personal observation of the person immediately following the accident. See e.g. Commercial Union Insurance Co. v. Christiansen, 80 B.R. 481, 483 (W.D. Mo. 1987). However, the fact that a person may be qualified on one aspect of an issue does not mean that the person is an expert on all aspects of the issue. Weisgram, 169 F.3d at 519. Rather, even if the witness may testify as an expert on one aspect of an issue, the trial court must limit the scope of the witness' testimony to the witness' areas of expertise so as to ensure the testimony is reliable under Rule 702. Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001).

Here, Plaintiff did not offer any evidence concerning Officer Nace's skill, training, knowledge, expertise or education concerning his ability to testify to the rate at which alcohol dissipates in the blood stream. Plaintiff simply relied on the fact that Officer Nace is a law enforcement official and that in his experience, prosecutors attempt to use a dissipation rate of .02% per hour. The record is barren of any evidence indicating that Trooper Nace had any specialized training or experience related to the rate of dissipation of alcohol in the blood stream. Further, although Plaintiff asserts that Trooper Nace's testimony establishes that Missouri has adopted a dissipation rate of .02% per hour, she failed to cite to either the bankruptcy court or us one instance where a Missouri court has in fact utilized that rate.

Plaintiff failed to meet her burden of proof in establishing the foundation that Trooper Nace had the requisite knowledge, skill, experience, training or education to

assist the bankruptcy court in determining the rate at which alcohol dissipates in the blood stream. Accordingly, we cannot find that the bankruptcy court abused its discretion in deciding that Officer Nace's testimony concerning the dissipation rate of alcohol in the blood stream was not admissible expert testimony.

Furthermore, because of the technical and complex nature of the issue, we agree with the trial court that the rate of dissipation of alcohol in the blood stream must be proved by expert testimony. See e.g. Commonwealth v. DiGeronimo, 652 N.E.2d 148, 157 n.15 (Mass. App. Ct. 1995). Based on this record, we cannot find that the bankruptcy court's finding that Plaintiff failed to demonstrate that Debtor's BAC was .10% or higher at the time of the accident was clearly erroneous.

*B. The HGN Test*

Plaintiff also maintains that Officer Nace's testimony that Debtor evidenced six of the six indications of intoxication in the horizontal gaze nystagmus ("HGN") test is dispositive to the issue of whether there was substantial evidence of Debtor's intoxication. The bankruptcy court noted that Trooper Nace administered the HGN test, but that Debtor was in a prone position, not upright. Thus, the trial court either determined that Trooper Nace's testimony concerning the results of the HGN was simply not reliable enough to be admissible under Rule 702 or that it may have met the minimum reliability threshold, but that it should be given very little weight.

The HGN test measures an individual's eye movement as it tracks an object that is moving laterally along a horizontal plane to the periphery of the individual's vision. There are six clues of intoxication in the HGN test. Trooper Nace testified that when he administered the test to the Debtor at the hospital, the Debtor presented all six clues.

Missouri courts do allow the admission of testimony based on the results of a HGN test if the person administering the test is adequately trained. See State v. Hill, 865 S.W.2d 702, 704 (Mo. Ct. App. 1993), overruled on other grounds State v. Carson, 941 S.W.2d 518 (Mo. 1997). Also, under Missouri law, a presentation of four of the six clues for intoxication is considered substantial evidence of intoxication. Hill, 941 S.W.2d at 704.

Missouri courts have admitted such testimony because it is generally accepted in the scientific community, relying on Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923). Rule 702, however, has replaced the Frye standard as the test for whether expert testimony should be admitted in Federal courts. Daubert, 509 U.S. at 587-88. Thus, as we have outlined above, under Rule 702, Federal trial courts must determine whether the proffered expert testimony is reliable rather than whether it is generally accepted. Id. at 592-93.

It is true that under Rule 702, whether the testimony is based on a methodology or reasoning that is generally acceptable is certainly relevant to whether it is reliable. Id. at 594. However, generally acceptable is not dispositive to the analysis. Id. Also, even testimony based on a generally accepted methodology may not be reliable when applied to a particular issue or set of facts. Kumho Tire Co, Ltd. v. Carmichaeal, 526 U.S. 137, 153-54 (1999); Blue Dane Simmental Corp. v. American Simmental Assoc., 178 F.3d 1035, 1040-41 (8th Cir. 1999).

Here, Plaintiff produced no evidence as to the reliability of the HGN test in general or its application to the specific facts of this case. In fact, Trooper Nace testified that the HGN should ideally be given while the person is standing but in this case he had to administer the test while the Debtor was lying down. Furthermore, there is no evidence of whether the injuries the Debtor had suffered as a result of the accident may have any effect on the results of the HGN test. Also, there is no evidence in the record as to the length of Trooper Nace's training in administering and

11

interpreting the HGN test. Given this record, we cannot determine the trial court abused its discretion if it found that Trooper Nace's administration and interpretation of the HGN test was not sufficiently reliable to be admitted under Rule 702.[5]

Furthermore, the bankruptcy court is afforded broad discretion in giving as much or as little weight to expert testimony as it deems appropriate. Gran v. Internal Revenue Service (In re Gran), 964 F.2d 822, 827 (8th Cir. 1992). Under the record here, the bankruptcy court was well within its discretion in giving little weight to Trooper Nace's testimony concerning the results of the HGN test.

## C.    The Totality of Trooper Nace's Observation of Debtor

Plaintiff next argues that the bankruptcy court's finding that the Debtor was not intoxicated was clearly erroneous because of the totality of Trooper Nace's testimony. Specifically, Defendant points to the following to support its contention: (1) Trooper Nace's detection of alcohol on Debtor's breath at the hospital, (2) Debtor's conflicting statements to Trooper Nace and Corporal Davis concerning the amount of alcohol he consumer prior to the accident, (3) Trooper Nace's testimony that Debtor was dazed and confused at the hospital, (4) Trooper Nace's testimony that debtor was unable to recall the facts surrounding the accident, (5) Trooper Nace's testimony that Debtor did not have his headlights on at the time of the accident and (6) the fact that Debtor made a U-Turn in a nearby Texaco station just prior to entering Highway 35.

---

[5]  We note that even if we were to apply Missouri law with respect to this admissibility question, we would still find that the bankruptcy court did not abuse its discretion in not admitting Trooper Nace's testimony concerning the results of the HGN test. Under Missouri law, if the proponent of the HGN test fails to establish that it was administered properly or by a sufficiently trained personnel, the trial court should exclude the results of the HGN test. Duffy v. Director of Revenue, 966 S.W.2d 372, 378 (Mo. Ct. App. 1998). Based on the record recited above, we could not say that the trial court abused its discretion even if we applied Missouri law with respect to the admissibility question.

Clearly, a law enforcement official may testify as to his observation of the allegedly intoxicated person immediately after the accident. Jones v. Hager, 80 B.R. 974, 977 (W.D. Mo. 1987). However, in Jones, the respective law enforcement officials testified as to their observation of the purported intoxicated person immediately after the accident. Id. Here, Trooper Nace did not observe Defendant until approximately three hours after the accident.

Also, there is evidence in the record that controverts Trooper Nace's testimony. First, the hospital records indicate that hospital personnel believed that Debtor was alert and responsive and that they did not detect alcohol on his breath. Second, Corporal Davis, who spoke with Debtor immediately after the accident, did not smell alcohol on Debtor's breath. Third, the accident reconstruction report prepared by the Highway Patrol does not list alcohol as a factor in the accident. Fourth, Trooper Nace's report of the accident indicates that there was a thin layer of ice crystals on the entrance ramp where Debtor lost control of his car. Fifth, Trooper Nace did not mark alcohol as a contributing factor in his initial accident report. Sixth, Austin Mackey, who was with Debtor at the Beaumont Club the night of the accident, testified that he did not believe that Debtor was intoxicated at the time he left the Club and would have driven with him without any reservations.

As mentioned above, the weight given to any witness, including an expert, is a matter within the discretion of the bankruptcy court. Gran, 964 F.2d at 827. Also, under the clearly erroneous standard of review, a reviewing court may not reverse the trial court's finding if it is plausible in light of the entire record. Anderson, 470 U.S. at 574. Given the record outlined above, and the bankruptcy court's ability to judge the credibility of the witnesses, the bankruptcy court's finding that the Debtor was not intoxicated at the time of the accident is certainly plausible. Therefore, we cannot say that the bankruptcy court's finding was clearly erroneous.

13

*D. Debtor's Guilty Plea to Careless and Imprudent Driving*

Plaintiff also asserts that the bankruptcy court improperly considered the fact that the prosecutor and Debtor reached a plea agreement whereby the Debtor pled guilty to careless and imprudent driving in exchange for the prosecutor dismissing the vehicular manslaughter charge. A review of the bankruptcy court's memorandum opinion indicates that it simply reviewed Debtor's guilty plea and found no admission of intoxication. Under Missouri law, if a person admits to intoxication, such admission may rebut the presumption that he was not intoxicated if his BAC was less .10%. Mo. Rev. Stat. § 577.037.5(3). Thus, the fact that the Debtor did not admit to being intoxicated at the time of the accident in his guilty plea was certainly relevant to the issue in dispute. Accordingly, the trial court did not err in examining Debtor's guilty plea.

*E. The Bankruptcy Court's Application of the Correct Burden of Proof*

Plaintiff's final argument is that the bankruptcy court applied the incorrect burden of proof. In adversary complaints to determine dischargeability under 11 U.S.C. § 529(a), the creditor must establish her case by a preponderance of the evidence. First Nat'l Bank of Olathe v. Pontow (In re Pontow), 111 F.3d 604, 608 (8th Cir. 1997). Here, Plaintiff contends that the bankruptcy court held her to a more exacting burden of proof.

Nowhere in its order does the bankruptcy court apply a standard of proof beyond a preponderance of the evidence. Plaintiff bases her contention on the bankruptcy court's citing the fact that Debtor pled guilty to careless and imprudent driving. Apparently, Plaintiff is asserting that because the bankruptcy court stated in its memorandum opinion that the Debtor pled guilty to careless and imprudent driving, somehow the bankruptcy court imposed a criminal burden of proof on the Plaintiff. However, as noted above, the bankruptcy court analyzed the guilty plea simply to

ensure that there were no admissions of intoxication in the plea. Accordingly, we cannot say that the bankruptcy court held Plaintiff to a more stringent burden of proof.

## IV.

After reviewing the entire record, we are not left with a definite and firm conviction that the bankruptcy court made a mistake in determining that Plaintiff failed to establish by a preponderance of the evidence that Debtor was intoxicated at the time of the accident. Accordingly, the bankruptcy court's finding that the Debtor was not intoxicated at the time of the accident is not clearly erroneous. Also, the bankruptcy court did not hold Plaintiff to a more stringent burden of proof than a preponderance of the evidence. Therefore, the judgment of the bankruptcy court is affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHT CIRCUIT

15