**In re INTERNET NAVIGATOR INC., Debtor.**

No. 01–02353.

United States Bankruptcy Court, N.D. Iowa.

Jan. 28, 2003.

John M. Titler, Cedar Rapids, IA, for Debtor.

Terry L. Gibson, Des Moines, IA, for Creditor Committee.

## ORDER RE OBJECTIONS TO CLAIMS

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on December 4, 2002 and January 7, 2003. The matters before the Court are OLS' objections to claims of Royce Bennett, Terry Letsche and Von Elbert and claimants' Motion to Exclude Kuda Testimony. Debtor Internet Navigator, Inc. was represented by attorney John Titler.

On–Line Services Ltd. ("OLS") appeared by attorney Thomas McCuskey. Attorney Dennis Currell represented George Walden. Royce Bennett, Von Elbert, and Terry Letsche ("Claimants") were represented by attorney Dan Childers. After hearing evidence and arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## FINDINGS OF FACT

Royce Bennett filed a proof of claim in the amount of $103,486. He has reduced the total claim to $83,317.54 after discovering that interest was erroneously computed. Terry Letsche claims $98,733 and Von Elbert claims $71,394. Bennett, Letsche and Elbert are principals and shareholders of Debtor.

OLS objects to all three of these claims. It objects to payment of interest on unpaid salary and argues reimbursement for items purchased may not have been approved by the board of directors. OLS objects to expenses related to the "Gryffin" purchase. It asserts Bennett has not accounted for payments already made to him; it questions whether purchases Letsche made were legitimate; and it argues Elbert provides no data for the calculation of the value of guarantees.

OLS argues these claims are equity claims rather than debt. It also asserts that the claims, if debt rather than equity, are contingent on Debtor's ability to pay and should be disallowed as the contingency has not been fulfilled.

Mr. Bennett testified that his claim is based on unpaid salary, purchases he made for the company, interest on the purchases and wages, and advances to the company. He has worked for Internet Navigator for seven years and is presently president of the company. There are no notes between the company and Mr. Bennett and the board of directors has not taken action approving repayment of his claims. The company considered issuing warrants to compensate for past debt but subsequently voided the warrants. Periodically, Mr. Bennett has been repaid money for other advances he made.

Mr. Elbert testified that he is a director of Internet Navigator since its inception. Part of his claim arises from a series of loans he made to the company of $27,500 plus 9% interest. In 1997 he advanced $25,000 to the company to purchase Gryffin Internet Co. for which he was not reimbursed. Mr. Elbert testified that he received no personal benefit from these funds. They were for the purpose of getting new customers for the company.

Mr. Letsche testified that his claim includes back wages, reimbursement for purchases, repayment of cash advances and interest. He is a Vice President of the company.

At the request of OLS, the record remained open after the hearing for inclusion of the testimony of Peggy Kuda. A transcript of her deposition taken December 16, 2002 has been offered as part of the record. Ms. Kuda's testimony focuses on the claim of Royce Bennett. She states she compared Mr. Bennett's claim with books and records she previously received in state court proceedings against Debtor. Ms. Kuda concludes Mr. Bennett's total claim should be $33,928.01. This includes wages plus interest of $45,046.70 minus overpayments to Bennett from Debtor of $11,118.69.

Claimants Bennett, Elbert and Letsche filed a Motion to Exclude Kuda Testimony. Specifically, Mr. Bennett objects OLS did not disclose an intention to submit an expert report. He argues Ms. Kuda's report was prepared after the hearing date and is inappropriate evidence in this matter. He

also asserts Ms. Kuda is not qualified as an expert, she relied on documentation that is not part of the record and she cannot be qualified as an expert because of her bias. If Ms. Kuda's testimony and report are admitted to the record, Mr. Bennett argues they should be given little weight. Mr. Bennett asserts Ms. Kuda fails to understand the audit procedure and she used erroneous assumptions and extraneous information.

## EXCLUSION OF TESTIMONY

Claimants, specifically Mr. Bennett, seek to exclude Ms. Kuda's deposition and report based on fairness, relevance and competency of the witness. The Court has wide discretion in admitting proffered testimony. *In re Barnes,* 266 B.R. 397, 404 (8th Cir. BAP 2001). The determination of the weight to be given testimony by an expert or any other witness is also a matter within the discretion of the court. *In re Gran,* 964 F.2d 822, 827 (8th Cir.1992).

The Court has reviewed the arguments of the parties, Ms. Kuda's report, the transcripts of the evidentiary deposition and the discovery deposition taken December 16, 2002, and the record as a whole. Mr. Bennett's attorney cross-examined Ms. Kuda at the time of the deposition. The dispute regarding Ms. Kuda's availability for the hearing is resolved as Mr. Bennett appears to accept that her father's health was preventing her from drawing up the report or attending the hearing.

In these circumstances, the Court will not exclude Ms. Kuda's testimony or report. Most of Mr. Bennett's arguments go more toward the weight to be given the evidence, rather than its admissibility. Ms. Kuda's deposition is admitted to the record, including her report attached as an exhibit. The Court will give it appropriate weight.

## DETERMINATION OF CLAIMS

If a claim filed under 11 U.S.C. § 501 comports with the procedural requirements of Bankruptcy Rule 3001, the proof of claim constitutes prima facie evidence of the validity and amount of such claim. *In re Roberts,* 210 B.R. 325, 328 (Bankr.N.D.Iowa 1997); Fed. R. Bankr.P. 3001(f). Unless a party in interest objects to the claim it is deemed allowed. See 11 U.S.C. § 502(a). If an objection to the claim is made, the court, after notice and a hearing, must determine the amount of the claim fixed as of the date of the petition. 11 U.S.C. § 502(b). The presumption provided by Bankruptcy Rule 3001(f) places the burden of producing sufficient evidence to rebut the presumption on the objecting party. *In re Brown,* 82 F.3d 801, 805 (8th Cir.1996); *In re Waterman,* 248 B.R. 567 (8th Cir. BAP 2000). Once this burden of production is met, the ultimate risk of nonpersuasion as to the allowability of the claim resides with the creditor. *Roberts,* 210 B.R. at 328.

George Walden and OLS argue that the amounts Claimants seek in their proofs of claims constitute equity, or capital contributions to Debtor, rather than debt. To be a creditor in bankruptcy the debtor must owe a debt to the claimant. *In re Colonial Poultry Farms,* 177 B.R. 291, 299 (Bankr.W.D.Mo.1995). Courts have set out multiple factors which may be relevant in determining whether a loan should be recharacterized as a contribution to capital. See *Id.* at 299–300; *In re Autostyle Plastics, Inc.,* 269 F.3d 726, 749–50 (6th Cir.2001); *In re Phase–I Molecular Toxicology, Inc.,* 287 B.R. 571, 576 (Bankr. D.N.M.2002); *In re Cold Harbor Assocs.,* 204 B.R. 904, 915 (Bankr.E.D.Va.1997). The factors should be considered in light

of the circumstances surrounding each case, with no one factor given controlling or decisive weight. *Phase–I*, at 576–577. The Court may disregard the outward appearances of the transaction and determine its actual character and effect. *Colonial Poultry*, 177 B.R. at 299. The more a transaction appears to reflect the characteristics of an arm's length negotiation, the more likely such a transaction is to be treated as debt. *Autostyle Plastics*, 269 F.3d at 750. "The ultimate issue then is whether the transaction had the substance and character of an equity contribution or of a loan." *In re Kids Creek Partners, L.P.*, 212 B.R. 898, 932 (Bankr.N.D.Ill. 1997).

■ The Court concludes that the claims of Bennett, Elbert and Letsche do not constitute capital contributions to Debtor. Based on the record presented, the surrounding circumstances reflect that the intent of Debtor and Claimants was that they be paid wages and repaid for advances and expenses. Debtor made some payments to these individuals in the past. Minutes of the Board recognize the debt and indicate an intent to issue "warrants". Such warrants were ultimately voided.

As this was a small, closely held corporation, it is not surprising that all formalities were not followed in documenting the debts. Corporate financial reports show that the company categorized these as liabilities as opposed to equity at least since the beginning of 1998. Minutes of meetings of the Board show it discussed documenting the debt prior to that time.

The amount due each Claimant does not directly correspond with each party's interest in the corporation. Although Claimants are insiders, shareholders and principals of Debtor, their claims are more like debt than capital contribution. OLS has not rebutted the validity of the claims in this regard. As such, they should not be recharacterized as capital contributions.

In general, the Court finds that the claims asserted are well documented. OLS does not strongly argue against allowance of any portion of Mr. Letsche's claim. As to Mr. Elbert's claim, OLS asserts the amounts attributed to the "Gryffin" transactions would be disallowed. The Court concludes that OLS has not produced sufficient evidence to rebut any portion of Mr. Letsche's or Mr. Elbert's claim.

■ The Court considers Mr. Bennett's claim separately as it is the subject of Ms. Kuda's report and deposition testimony. Ms. Kuda relied on financial information in her possession which was related to the litigation against Debtor by former shareholders, Michael Glick, George Walden and Geoffrey Lohff. OLS has taken assignment of the claims of these three individuals in Debtor's bankruptcy case, in the total amount of approximately $700,000. The Order re Confirmation and Disclosure Statements filed January 22, 2003 sets out some of the relevant background. Ms. Kuda performed a forensic audit on behalf of Glick, Walden and Lohff in 1999 related to their action against Debtor and Claimants.

Ms. Kuda testified at her deposition that she reduced Mr. Bennett's claim to the extent any item claimed did not have a corresponding receipt. She further deducted any payments her records showed Mr. Bennett received. She applied an interest rate which is lower than that Mr. Bennett uses.

Based on the record as a whole, including the transcript of Ms. Kuda's deposition and briefs filed by the parties, the Court concludes OLS has failed to rebut the validity of Mr. Bennett's claim. Ms. Kuda makes deductions from Mr. Bennett's claim based on information she reviewed

for the principals of OLS in the previous state court action. That information is not part of the record herein. Mr. Bennett points out that, although he as received some payments from Debtor, he has taken that into account in this proof of claim and exhibits. Thus, he has not made claims for amounts for which has already been reimbursed or compensated. OLS' evidence is insufficient to undermine the validity of Mr. Bennett's claim.

**WHEREFORE,** claimants' Motion to Exclude Kuda Testimony is DENIED.

**FURTHER,** OLS' objections to claims of Bennett, Elbert and Letsche are OVERRULED.

**FURTHER,** the claims in issue are allowed as follows:

| | |
|---|---|
| Royce Bennett | $83,317.54 |
| Von Elbert | 98,733.00 |
| Terry Letsche | 71,394.00 |